**Cody Darus FRENCH, Appellant**

**v.**

**The STATE of Texas, Appellee**

**No. 11-14-00284-CR**

Court of Appeals of Texas, Eastland.

Opinion filed August 10, 2017

Rehearing Denied December 7, 2017

Britt Lindsey, Assistant, James Hicks, District Attorney, Abilene, TX, for Appellee.

John Bennett, Amarillo, TX, for Appellant.

Panel consists of: Wright, C.J., Willson, J., Bailey, J.

## OPINION

MIKE WILLSON, JUSTICE

The jury convicted Cody Darus French of the offense of aggravated sexual assault of his five-year-old daughter.[1] The trial court assessed punishment at confinement for sixty years and sentenced him. On appeal, Appellant asserts two issues. We reverse and remand.

### I. Evidence at Trial

Appellant has not challenged the sufficiency of the evidence, so we only outline the necessary and contextual facts relevant to his appeal. Appellant and D.F. were married when D.F. was fourteen.[2] During their marriage, they had four children together, including the victim, J.F.[3] While babysitting, D.F.'s mother, C.B., witnessed J.F. and her six-year-old brother, C.F., engage in a simulated sexual act. C.B. informed D.F. of this incident when D.F. returned home. When confronted by her mother, J.F. stated that she learned the act from Appellant.

### A. The State's Case

J.F. testified that Appellant had penetrated her anus with his sexual organ. Although no physical evidence of sexual abuse existed, a SANE nurse, Judith LaFrance, testified that the details that J.F. gave her appeared reliable. Marshall Davidson, a Child Protective Services investigator, conducted a joint investigation with law enforcement. He spoke to several individuals, including J.F., her sister, one of J.F.'s brothers, her mother, LaFrance, and Appellant. Davidson reported how C.F. had described inappropriate "acting out" by J.F. According to Davidson, J.F.'s acting out occurred because of acts allegedly done by Appellant.

Davidson testified that Appellant had told him that Appellant had been aroused when J.F. sat on his lap, but Appellant denied that he had abused J.F. and claimed that maybe a neighbor had abused her. Davidson found J.F.'s story to be credible. Likewise, Melinda Beard, the director of the Taylor County Child Advocacy Center, testified that J.F. did not appear to have been "coached"; Beard also said that J.F. reported that, after Appellant had finished assaulting her, he would clean her "pee-pee".[4] with "wipeys."

### B. Appellant's Defense

Appellant called witnesses who testified about false allegations that C.B. had made against Appellant; Appellant also argued that C.B. had made up the allegations against Appellant because she did not like him and because she had to move out of the family's house. Appellant testified on his own behalf and denied that he assaulted J.F.

### C. The Jury Charge Conference

During the jury charge conference, Appellant objected to a portion of the charge and requested that the jury charge clearly instruct the jury that, in order to find Appellant guilty, all jurors must agree on the "manner" in which the sexual assault occurred; the trial court denied his request. The charge included two distinct offenses, aggravated sexual assault of a child by contact or penetration of (1) the

---

1. See TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (iii), (iv), (a)(2)(B) (West Supp. 2016).

2. D.F. testified that Appellant, during the marriage, liked to have sex a lot, rubbed his penis on her "butt," and asked her to engage in anal sex. After he was finished, he would sometimes clean himself with baby wipes.

3. Appellant, who was twenty-one years old when he married D.F. in 2003, had children from four other women.

4. J.F. also referred to her sexual organ as her "pee-pee."

victim's sexual organ or (2) the victim's anus with Appellant's sexual organ. The trial court did not instruct the jury that it must be unanimous in finding either that Appellant used his sexual organ to contact or penetrate J.F.'s sexual organ or that he used his sexual organ to contact or penetrate her anus.

## II. *Analysis*

Appellant asserts in his first issue that the jury charge violated his constitutional right to a unanimous verdict and asserts in his second issue that the trial court violated his right to a public trial.

### A. *Issue One: The trial court should have included a jury unanimity instruction.*

Appellant asserts that the jury charge violated his constitutional right to a unanimous verdict with respect to whether he used his sexual organ to contact or penetrate J.F.'s sexual organ *or* her anus. TEX. CONST. art. V, § 13; *see* TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (West Supp. 2016); *Cosio v. State*, 353 S.W.3d 766, 771–74 (Tex. Crim. App. 2011).

### 1. *Units of Prosecution*

The Texas Court of Criminal Appeals has held that a defendant may face prosecution for aggravated sexual assault of a child for the penetration of separate orifices regardless of whether the penetration occurred during the same transaction. *Jourdan v. State*, 428 S.W.3d 86, 96 (Tex. Crim. App. 2014); *see* PENAL § 22.021(a)(1)(B)(i), (iii), (iv), (a)(2)(B). The Texas Court of Criminal Appeals in *Vick v. State* noted that "each section [under section 22.021] usually entails different and separate acts to commit the various, prohibited conduct." 991 S.W.2d 830, 833 (Tex. Crim. App. 1999). In *Vick*, the court held that this specificity reflected the legislature's intent to separately and distinctly criminalize any act that constituted the proscribed conduct. *Id.* Therefore, because Section 22.021(a)(1)(B)(iii) and (iv) prohibit contact with a child's sexual organ and anus, respectively, the statute's subsections define two separate and distinct acts. *See id.* (a conduct-oriented statute, Section 22.021 uses "or" to distinguish different conduct).

### 2. *The jury charge*

■ The application paragraph of the trial court's jury charge included the following "two elements":

1. [T]he defendant, in Taylor County, Texas, on or about March 7, 2013, intentionally or knowingly caused the contact with or penetration of the anus of [J.F.] with his male sexual organ *or* the defendant caused contact with or penetration of the female sexual organ of [J.F.] with his male sexual organ; and

2. [J.F.] was at the time a child younger than fourteen (14) years of age.

... With regard to element 1, you need not all agree on the manner in which the sexual assault was committed.

(Emphasis added). The Texas Court of Criminal Appeals has held that, when disjunctive language contains different criminal acts, a jury must be instructed that it cannot return a guilty verdict unless it agrees unanimously that the defendant committed one of the acts. *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005); *see Francis v. State*, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000) (holding that jury charge that allows for nonunanimous verdict concerning what specific criminal act defendant committed is error); *Martinez v. State*, 190 S.W.3d 254, 259 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (holding that allegation that defendant caused his sexual organ to contact minor's

sexual organ is different offense than allegation that he caused his sexual organ to contact minor's anus). Unanimity in this context means that each and every juror agrees that the defendant committed the same, single, specific criminal act. *Ngo*, 175 S.W.3d at 745.

In this case, the trial court did not provide a unanimity instruction that the jury must unanimously agree on which orifice was contacted or penetrated by Appellant, and this was error. *See Ngo*, 175 S.W.3d at 744; *Francis*, 36 S.W.3d at 125; *Martinez*, 190 S.W.3d at 259. Because the jury charge submitted two distinct criminal offenses, we hold that the charge was erroneous because it failed to instruct the jury on the unanimous verdict requirement as to which orifice Appellant contacted or penetrated with his sexual organ. *See Martinez*, 190 S.W.3d at 258–59.

B. *Issue One: Appellant preserved his jury charge complaint.*

■ The State argues that, even if there was error, Appellant failed to preserve error for appellate review when he failed to object to the charge. While we agree that Appellant's objection was not as specific as it could have been, he did preserve his jury charge complaint.

■ No "magic words" are required to preserve error for appellate review. *Bennett v. State*, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007). In *Francis*, the court held that the defendant had preserved error when he brought to the court's attention a potential error in the charge. 36 S.W.3d at 123. In *Francis*, before the defense counsel objected to the charge, defense counsel stated:

Judge, we would still urge that [the State] be required to elect between the two manners of committing the offense

between touching breasts or touching the genitals because the way the indictment is set out in a single court [sic] single paragraph, it would authorize the jury to essentially have a non-unanimous verdict if some voted-believed beyond a reasonable doubt he touched breasts and another group believed beyond a reasonable doubt he touched genitals.

*Id.* (alteration in original).

Similar to *Francis*, the State alleged that Appellant had contacted or penetrated two separate body parts of J.F. *See Francis*, 36 S.W.3d at 123. In response to the proposed charge, Appellant's trial counsel objected as follows:

[DEFENSE COUNSEL]: Yes, Your Honor. On page 5 of the charge, under application of law to facts, the third—or actually, I guess it's the second paragraph which says, "You must all agree on elements one and two listed above, but with regard to element one you need not all agree on the manner in which the sexual assault was committed," we would object to that charge—that part of the charge and request that the charge be changed to read, "With regard to element one, you must all agree on the manner in which the sexual assault was committed."

While Appellant's trial counsel could have been more artful and specific in pointing out the exact error and could have been more precise with his requested remedy, he preserved his complaint on the jury charge issue.

C. *Issue One: Harm Analysis*

■ The State also argues that, even if Appellant preserved error, he suffered no actual harm. Appellant asserts that he suffered "some harm" from the jury charge error.[5] *See Almanza v. State*, 686

---

5. Appellant does not assert that this court

should apply a constitutional harm analysis

S.W.2d 157; 171 (Tex. Crim. App. 1984). When an appellate court undertakes an *Almanza* harm analysis for jury charge error, the first question is whether the defendant preserved error. If he did, then the court will reverse if the defendant suffered "some harm." *Ngo*, 175 S.W.3d at 743 (citing *Almanza*, 686 S.W.2d at 171). Neither the State nor the defendant bears the burden of proving harm; the court of appeals must review the entire record to determine if the defendant suffered harm. *See Elizondo v. State*, 487 S.W.3d 185, 205 (Tex. Crim. App. 2016); *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

As this court analyzes whether a defendant suffered "some harm," we consider: (1) the jury charge as a whole; (2) the arguments of counsel; (3) the entirety of the evidence; and (4) other relevant factors present in the record. *Reeves*, 420 S.W.3d at 816. The less stringent standard of finding "some harm" still requires us to find that the defendant "suffered some actual, rather than merely theoretical, harm from the error." *Elizondo*, 487 S.W.3d at 205 (quoting *Reeves*, 420 S.W.3d at 816). "Reversal is required if the error is 'calculated to injure the rights of the defendant.'" *Cornet v. State*, 417 S.W.3d 446, 449 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 171. We will address factors one and three first followed by two and four.

### 1. *Factor One: The entirety of the jury charge*

The charge provided the instruction that, "[t]o prove that the defendant is guilty of aggravated sexual assault of a child, the state must prove, beyond a reasonable doubt, two elements." The trial court instructed the jury that, "[w]ith regard to element 1, you need not all agree on the manner in which the sexual assault was committed." The Texas Court of Criminal Appeals has held that, when multiple offenses are alleged—for example, when the defendant is accused of touching the victim's breasts or genitals, two separate offenses—the jury must be instructed that its verdict must be unanimous as to one of those acts. *See Pizzo v. State*, 235 S.W.3d 711, 719 (Tex. Crim. App. 2007); *see also Williams v. State*, 474 S.W.3d 850, 859–60 (Tex. App.—Texarkana 2015, no pet.). The trial court should have instructed the jury that it had to be unanimous on the offense of contact or penetration of the child's sexual organ or unanimous on the offense of contact or penetration of the child's anus, and because it did not do so, it erred.

### 2. *Factor Three: The entirety of the evidence*

A review of the entirety of the evidence reveals that the State focused on Appellant's acts in the living room, bedroom, and bathroom, where he sexually assaulted J.F. by contact or penetration of her anus by his penis. LaFrance testified about the lack of injury to J.F.'s sexual organ, and LaFrance also described how J.F. would have suffered horrible damage if her sexual organ had been penetrated. However, Beard testified that J.F. did not appear to have been "coached" and also said that

pursuant to Tex. R. App. P. 44.2(a). We note that we have previously recognized that, when a party alleges a unanimity violation and the party has properly preserved that error at trial, the error is subject to a constitutional harm analysis under Rule 44.2(a). *Newsome v. State*, No. 11-09-00222-CR, 2012 WL 4458176, at *5 (Tex. App.—Eastland Sept. 27, 2012, no pet.) (mem. op., not designated for publication) (citing *Cosio*, 353 S.W.3d at 776). Under that standard, we must reverse the judgment of conviction unless we can determine beyond a reasonable doubt that the error did not contribute to the conviction. *See* Tex. R. App. P. 44.2(a).

J.F. reported that, after Appellant had finished assaulting her, he would clean her "pee-pee" with "wipeys." Davidson testified that Appellant told him that Appellant had been aroused when J.F. sat on his lap. Davidson also found J.F.'s story to be credible. Beard further testified that there were one or two instances where "[J.F.] said that it was his private in her pee-pee, but she self-corrected" to "butt."

### 3. *Factor Two: The State's Arguments*

The prosecutor specifically argued, "[T]he word there is 'or,' so you don't have to find that he contacted and penetrated the anus of the child *and* he contacted and penetrated the female sexual organ. You only have to find one of those. That's what the 'or' means" (emphasis added). The prosecutor also stated:

> So you can find that one of them—you know, one of you may think that he contacted the anus and another one may think that he penetrated the anus. You don't have to agree on that thing, as long as you all agree he did one of those things. All of those things are sexual assault in that, so you don't have to reach an agreement, a unanimous agreement, on that. So that's what that language at the bottom of that says with regard to element one, you need to not all agree on the manner in which the sexual assault was committed.

In this context, the State may have intended "manner" as "manner and means" of contact or penetration of the anus, for which a jury need not be unanimous because penetration includes contact. *See Jourdan v. State*, 428 S.W.3d 86, 97 (Tex. Crim. App. 2014); *see also Valdez v. State*, 211 S.W.3d 395, 399–400 (Tex. App.—Eastland 2006, no pet.). However, the statement was ambiguous because the jury could have interpreted, in light of the trial court's instruction, that "manner" referred

to J.F.'s two orifices. In addition, the jury could have inferred from J.F.'s testimony about Appellant wiping her "pee-pee" after the abuse that Appellant had sexually assaulted her by contact or penetration of her sexual organ. The jury may convict on the testimony of the victim alone. *See* CRIM. PROC. art. 38.07; *Evans v. State*, No. 11-13-00296-CR, 2015 WL 1501663, at *4 (Tex. App.—Eastland Mar. 31, 2015, pet. ref'd).

Appellant's case is similar to *Clear v. State*, where harm was shown because the jury heard evidence on separate and distinct offenses, and then in closing argument, the State argued that the jury did not need to decide unanimously if the defendant had penetrated the victim's sexual organ with his own sexual organ or with his finger. 76 S.W.3d 622, 623–24 (Tex. App.—Corpus Christi 2002, no pet.); *see also Williams*, 474 S.W.3d at 859–60 (trial court erroneously instructed or reminded the jury that it need not be unanimous in deciding whether a victim's sexual organ or anus was sexually assaulted). In Appellant's case, the prosecutor did not state that some of the jury could convict on the offense related to the sexual organ and some of the jury could convict on the offense related to the anus. The prosecutor specifically argued, "[S]o you don't have to find that he contacted and penetrated the anus of the child *and* he contacted and penetrated the female sexual organ" (emphasis added). The prosecutor also did not argue that the jury could mix evidence of two separate acts. She primarily adduced evidence that Appellant sexually assaulted J.F. by contacting or penetrating J.F.'s anus and, in closing, focused on that set of facts to the jury.

### 4. *Factor Four: Other Relevant Information*

In the fourth factor, we review other relevant information in the record, includ-

ing voir dire and opening statements. The State explained that the case was a very serious aggravated sexual assault case that may involve talking about the words "vagina," "anus," "penis," and "ejaculation." The State explained that penetration does not have to mean full penetration but could mean just contact with the child's vaginal area, the lips. The State explained the elements of the crime and gave an example that the perpetrator's penis contacted what the child described as her "pee-pee or whatever."

The prosecutor questioned the venire panel about the percentage of "false allegations" of child sexual abuse. The prosecutor explained the process of an investigation and a trial and how a child-victim would be interviewed by her parents, police, a forensic interviewer, a licensed counselor, and the prosecutor before being questioned by defense counsel at trial. The State asserted that ninety-seven percent of the abusers of children are family members and explained that availability was the reason for that statistic. The State outlined that abnormal findings found in a physical exam after an allegation of abuse occurs in only 5.5% of the cases; in one study, it was two out of thirty-six victims that definitive findings of penetration were found. The State discussed how those statistics could occur because of how quickly the body heals and because of delayed outcries.

The State discussed how to evaluate the credibility of the child-victim by the consistency of her story, her age and mental abilities, the words that she used and whether she had been "coached," and how children can be scared, but generally lie to "get out of trouble" not "in trouble." The State also explained that a child who has to tell the story five times before they get to court probably has not gained anything and is not lying. The State further explained that, at trial, the child had to take an oath to tell the truth and that the trial court would determine if the child knew the difference between the truth and a lie.

The State asked about how a child-victim under the age of fourteen might act if she had been abused, and panel members responded that a child may act out "sexually," "violently," or with just "crazy behavior." The State explained how the "Law & Order" show on television was not real life and asked if a prospective juror would require her to have scientific evidence, physical evidence, or DNA evidence to prove the case. She queried the members of the venire panel as to whether they could convict if they believed the child beyond a reasonable doubt and that was the only evidence in the case. The State also asked if they could follow the law. During opening statements, the State mentioned that there was no trauma to J.F.'s sexual organ and anus.

### 5. Summary of Four Factors

The State built its case against Appellant based on J.F.'s testimony and that of other witnesses, including D.F., J.F.'s mother; the Child Protective Services investigator, Davidson; C.B., J.F.'s grandmother; LaFrance, the SANE nurse; and Beard, the forensic interviewer. Although the State primarily presented evidence of a sexual assault of J.F.'s anus by Appellant with his penis, Beard said that J.F. reported that, after Appellant had finished assaulting her, he would clean her "pee-pee" with "wipeys." Beard also testified that there were one or two instances where "[J.F.] said that it was his private in her pee-pee, but she self-corrected" to "butt." The jury could have inferred from J.F. that Appellant wiped her "pee-pee" and "butt" after he had assaulted her sexual organ and anus. After a review of the record, we cannot say that Appellant suf-

fered no harm.[6] We sustain Appellant's first issue, and in light of that resolution, we do not address his second issue.

### III. *This Court's Ruling*

We reverse the judgment of the trial court and remand the cause to the trial court for further proceedings consistent with this opinion.

---

**6.** Furthermore, we cannot determine beyond a reasonable doubt that the error did not contribute to Appellant's conviction. *See* Tex. R. App. P. 44.2(a); *Newsome*, 2012 WL 4458176, at *5.