

# IN THE COURT OF CRIMINAL APPEALS
## OF TEXAS

---

### NO. PD-0038-18

---

### CODY DARUS FRENCH, Appellant

### v.

### THE STATE OF TEXAS

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE ELEVENTH COURT OF APPEALS
### TAYLOR COUNTY

---

**Yeary, J., delivered the opinion for a unanimous Court.**

## O P I N I O N

The Eleventh Court of Appeals reversed Appellant's conviction for aggravated sexual

assault of a child. *French v. State*, 534 S.W.3d 693 (Tex. App.—Eastland 2017). The court

of appeals held that the trial court erred in not giving a unanimity instruction to the jury as

to which orifice Appellant penetrated with his sexual organ. *Id.* at 697. The court of appeals

concluded that Appellant properly objected to the instruction, and it applied a "some harm"

analysis under *Almanza*. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)

(op. on reh'g) (construing Article 36.19 of the Code of Criminal Procedure to provide that objected-to jury charge error should be evaluated for "some" harm, while unpreserved jury charge error will be reversible only if it causes "egregious" harm); TEX. CODE CRIM. PROC. art. 36.19. We granted the State's petition for discretionary review to address two issues: (1) whether Appellant failed to preserve error by not leveling an appropriate objection to the jury charge at trial; and (2) whether Appellant suffered any level of harm—either "some" or "egregious"—as a result of the trial court's jury charge. We reverse the judgment of the court of appeals and remand the case for further proceedings.

## I. BACKGROUND

### A. The Indictment

Appellant was charged by indictment with the aggravated sexual assault of his five-year-old daughter, J.F.[1] The State's original indictment contained a single count alleging aggravated sexual assault of a child. It read in pertinent part as follows:

> "On or about the 7th Day of March, 2013 . . . CODY DARUS FRENCH did then and there intentionally and knowingly cause the penetration of the anus of [J.F.], a child who was then and there younger than six (6) years of age, by the male sexual organ of CODY DARUS FRENCH.

Roughly one month before trial, the indictment was amended to add the following language in the same paragraph and same count: "and cause contact with and penetration of the female

---

[1] The court of appeals used the abbreviation "J.F." to protect the victim's identity, and we will do the same. TEX. CODE CRIM. PROC. art. 57.01.

sexual organ of [J.F.], a child who was younger than (6) years of age, by the male sexual organ of CODY DARUS FRENCH." In its amendment, the State also added contact with the anus to the existing charge of penetration of the anus. The State's amended indictment thus presented the jury with four options for a conviction: (1) Appellant contacted J.F.'s anus with his sexual organ; (2) Appellant penetrated J.F.'s anus with his sexual organ; (3) Appellant contacted J.F.'s sexual organ with his sexual organ; and (4) Appellant penetrated J.F.'s sexual organ with his sexual organ. Any one of these acts would constitute a first degree felony offense. TEX. PENAL CODE § 22.021(e).

### B. The Evidence at Trial

While babysitting J.F. and J.F.'s older brother, J.F.'s maternal grandmother, Catherine Bishop, found J.F. "doing sexual stuff" with her brother. Bishop informed J.F.'s mother, who then confronted J.F. about this behavior. J.F. told her mother that she learned the behavior from her father, Appellant. Specifically, J.F. recounted that Appellant "humped her," which she said meant that Appellant was "sexing her." As a result of these allegations, J.F. was taken to the Child Advocacy Center (CAC) and to a hospital, where she eventually detailed numerous instances in which Appellant penetrated her anus with his sexual organ in various locations in the family's home.

The State presented a significant amount of evidence that Appellant penetrated J.F.'s anus with his sexual organ. But the record contains comparatively little evidence that Appellant contacted—much less penetrated—J.F.'s sexual organ as alleged in the amended

indictment. The State admitted the testimony of a CAC forensic interviewer who questioned J.F. after her outcry, as well as the testimony of a Sexual Assault Nurse Examiner (SANE) who examined J.F. These witnesses detailed the sexual-assault allegations J.F. made during her CAC interview and SANE exam, respectively.

Collectively, the State's witnesses established that the multiple assaults occurred in three distinct locations in the family's home: the bathroom, the living room, and Appellant's bedroom. In the bathroom, Appellant inserted his sexual organ into J.F.'s anus while she was on the sink. In the living room, Appellant pulled his pants down and made J.F. sit naked on top of his sexual organ. In the bedroom, Appellant forced J.F. to lie on her stomach, and penetrated J.F.'s anus with his sexual organ.

J.F. testified that, in at least two of the three locations where the sexual assaults occurred, Appellant penetrated, not merely contacted, her anus with his sexual organ. But she denied that Appellant ever penetrated her sexual organ in any of the three incidents. When asked on direct examination whether Appellant inserted his sexual organ into her "middle part,"[2] which was one of the terms she used for her female sexual organ, J.F. explicitly testified that Appellant penetrated her anus, but never her sexual organ.

The physical evidence presented at trial likewise did not suggest that Appellant ever penetrated J.F.'s sexual organ. According to the SANE, the penetration of a five-year-old's

---

[2] J.F. had three names for her female sexual organ that she used throughout various interviews and at trial: her "pee-pee" and her "middle spot" or "middle part." She referred to her anus as her "butt" or "bottom."

sexual organ would result in "horrible damage," but there was no such damage present when the nurse examined J.F. And while there was also no evidence of any injury or damage to J.F.'s anus, this, according to the nurse, is not unusual in cases of sexual assault of a child's anus because the tissue around a five-year-old's anus "is a lot more elastic, a lot more forgiving, and can accommodate things much more easily than a five-year-old's vagina." When asked if it would be possible to have penetration of a five-year-old's anus with no evidence of trauma, the SANE responded: "It is possible, yes. . . [I]t depends on the force, on the extent of the penetration. . . But it's certainly possible not to have injury."

The only evidence—that we have observed—of contact or possible contact between Appellant and J.F.'s sexual organ came in the form of a statement that J.F. immediately recanted, evidence that, after sexually assaulting J.F., Appellant cleaned both her anus and her sexual organ with a "wipey," and evidence that J.F. was made to sit on Appellant's lap while both she and Appellant were naked. J.F. stated during the CAC forensic interview that Appellant's sexual organ penetrated her "pee-pee." But she immediately self-corrected, insisting that, in fact, Appellant's sexual organ never entered her sexual organ, it only entered her "bottom." J.F. told the CAC interviewer that, after assaulting J.F. in the living room, Appellant "got wipeys and wiped her pee-pee and her butt and wiped his private[.]" Additionally, J.F. stated that Appellant forced her to sit naked on Appellant's naked lap while Appellant penetrated her anus with his sexual organ. This evidence at least raises the possibility that, in the course of penetrating J.F.'s anus, Appellant contacted and/or

penetrated J.F.'s sexual organ with his own sexual organ.

## C. The Jury Charge

In the jury charge, the trial court authorized the jury to convict Appellant based on any one of the four theories alleged in the amended single-count indictment: (1) contact-anus, (2) penetration-anus, (3) contact-sexual organ, and (4) penetration-sexual organ. In the application paragraph, the trial court set out what it characterized as the two "elements" of the offense, as follows:

1.  The defendant, in Taylor County, Texas, on or about March 7, 2013, intentionally or knowingly caused the contact with or penetration of the anus of J.F. with his male sexual organ *or* the defendant caused contact with or penetration of the female sexual organ of J.F. with his male sexual organ; and

2.  J.F. was at the time a child younger than fourteen (14) years of age.

(Emphasis added.) Next, addressing the issue of jury unanimity, the trial court explicitly instructed the jury regarding these two "elements":

You must all agree on elements 1 and 2 listed above. With regard to element 1, you need not all agree on the manner in which the sexual assault was committed.

Thus, the jury was authorized to convict Appellant without agreeing as to (among other things) which orifice he had contacted or penetrated.

When asked whether he had any objection to the jury charge, Appellant's trial counsel responded:

[DEFENSE COUNSEL]: On page 5 of the charge, under application of law to

facts, the third–or actual, I guess it's the second paragraph, which says, "You must all agree on elements one and two listed above, but with regard to element one you need not all agree on the manner in which the sexual assault was committed," we would object to that charge–that part of the charge and request that the charge be changed, to read, "With regard to element one, you must all agree on the manner in which the sexual assault was committed."

The State responded that the jury need not be unanimous in its determination of the "manner and means" by which Appellant committed the offense; instead, the jury need only be unanimous as to whether Appellant actually committed the charged offense, regardless of the particular manner or means. The trial court overruled Appellant's objection. The jury returned a verdict finding Appellant guilty of aggravated sexual assault of a child. And then the trial court assessed a sixty-year sentence.

## D. On Appeal

On appeal, Appellant argued that the jury charge ran afoul of the juror unanimity requirement because it did not require the jury to agree as to which orifice Appellant contacted and/or penetrated. This, according to Appellant, was not a "manner and means" issue but rather a case of distinct and separate offenses, each of which demanded juror unanimity for a conviction. The court of appeals agreed, and it held that the trial court erred in failing to submit a proper instruction in that regard. *French*, 534 S.W.3d at 697. Further, the court of appeals found Appellant's objection to the erroneous jury charge sufficient to invoke the "some harm" standard of review under *Almanza*. *Id.*; *Almanza*, 686 S.W.2d at 171. Finding that there was, indeed, some harm under the *Almanza* factors, the court of

appeals reversed Appellant's conviction, and did not reach Appellant's only other point of error. *French*, 534 S.W.3d at 697–701.

In its petition for discretionary review, the State contends that the court of appeals erred to hold that Appellant's trial objection preserved error so as to invoke *Almanza*'s "some harm," rather than the "egregious harm," standard. The State also argues that any error in the jury charge as to the unanimity requirement did not result in harm to Appellant. We conclude that Appellant's objection was sufficient to trigger the "some harm" standard, but we sustain the State's second argument. Accordingly, we reverse the court of appeals' judgment.

## II. JURY UNANIMITY

A defendant in a criminal trial in Texas has the right to a unanimous jury verdict on each element of the charged offense. TEX. CONST. art. V § 13; *Jourdon v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014) (citing *Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007)); *see also* TEX. CODE CRIM. PROC. art. 26.29(a) ("Not less than twelve jurors can render and return a verdict in a felony case. It must be concurred in by each juror and signed by the foreman."); *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005) ("Under our state constitution, jury unanimity is required in felony cases, and, under our state statutes, unanimity is required in all criminal cases."); *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011) ("Texas law requires that a jury reach a unanimous verdict about the specific crime that the defendant committed. This means that the jury must 'agree upon a single and discrete incident that would constitute the commission of the offense alleged.'")

(quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)). It is error to authorize a jury to render a guilty verdict without reaching a unanimous decision as to each element of the charged offense. *Cosio*, 353 S.W.3d at 771.

Under pertinent subsections of Section 22.021(a)(1)(B) of the Texas Penal Code, a person commits the offense of aggravated sexual assault of a child if the person, among other things, intentionally or knowingly:

(i) causes the penetration of the anus or sexual organ of a child by any means;

* * *

(iii) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor; [or]

(iv) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor[.]

TEX. PEN. CODE § 22.021(a)(1)(B)(i), (iii) & (iv). The amended indictment in this case alleged that Appellant committed the offense in four ways: two ways that are embraced by Section 22.021(a)(1)(B)(i) (both penetration of the anus and penetration of the sexual organ); a third way that is embraced by Section 22.021(a)(1)(B)(iii) (causes a child's sexual organ to contact the actor's sexual organ); and a fourth way embraced by Section 22.021(a)(1)(B)(iv) (causes the child's anus to contact the actor's sexual organ). But the trial court's charge to the jury in this case did not explicitly require the jury to unanimously agree upon which of these Appellant was convicted.

We have explained, in the context of double jeopardy claims, that each of these ways

of committing aggravated sexual assault constitutes a separate offense. *See Gonzales v. State*, 304 S.W.3d 838, 849 (Tex. Crim. App. 2010) ("The Legislature intended that penetration of a child's anus should be regarded as a distinct offense from penetration of her sexual organ even if they occur during the course of the same incident or transaction."); *Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999) (holding that the different subsections of Section 22.021(a)(1)(B) constitute separately actionable offenses for double jeopardy purposes). Our double-jeopardy jurisprudence, we have also said, is "closely intertwined" with our jury-unanimity jurisprudence. *See Gonzales*, 304 S.W.3d at 848 (noting that "double-jeopardy and jury-unanimity issues constitute 'closely intertwined strands of our jurisprudence'") (quoting *Huffman v. State*, 267 S.W.3d 902, 905 (Tex. Crim. App. 2008)). Accordingly, when we have construed these different provisions to carve out separate offenses for double jeopardy purposes, we have essentially held that they are separate offenses for jury unanimity purposes as well. The court of appeals was therefore correct to hold that the trial court erred by failing to require the jury to attain unanimity with respect to which of the two orifices alleged in the amended indictment that the Appellant contacted and/or penetrated before finding him guilty. *French*, 534 S.W.3d at 697.

## III. PRESERVATION: "SOME" HARM VERSUS "EGREGIOUS" HARM

Indeed, the State does not vigorously contest the court of appeals' conclusion that the

jury charge was erroneous.[3] Instead, it argues that Appellant did not adequately apprise the trial court of the nature of the error so as to invoke *Almanza*'s "some harm" standard, and that, in any event, the error was harmless under either of *Almanza*'s harm standards. Therefore, the first issue we must address is whether the court of appeals correctly held that Appellant's objection was sufficient to put the trial court on notice that Appellant was making a jury unanimity objection with respect to which orifice Appellant penetrated.

With respect to jury unanimity, the trial court referred the jury back to what it characterized as "element 1" in the application paragraph.[4] It then instructed the jurors that they need not "all agree on the manner in which the sexual assault was committed." In so instructing the jury, the trial court effectively authorized it to convict Appellant without agreeing with respect to which of J.F.'s orifices he contacted and/or penetrated. Appellant objected: "[W]e would object to that charge–that part of the charge and request that the charge be changed, to read, 'With regard to element one, you must all agree on the manner in which the sexual assault was committed.'" Thus, he clearly identified for the trial court

---

[3] The State did not even make a substantial argument in its reply brief on direct appeal that the jury charge was not erroneous. While asserting in the caption to its response to Appellant's first point of error that "[t]he jury charge was not erroneous," State's Brief on Appeal at 7, the only substantive arguments the State made for rejecting this point of error were, as here, that (1) Appellant failed to preserve his jury-unanimity complaint, and (2) that any jury charge error was harmless.

[4] In what it deemed "element 1," the trial court instructed the jury that it must find that Appellant "caused the contact with or penetration of the anus of J.F. with his male sexual organ or [Appellant] caused contact with or penetration of the female sexual organ of J.F. with his male sexual organ."

what he found objectionable. But did he clearly identify why it was objectionable?[5]

The State contends that, in articulating why he thought the trial court's unanimity instruction was objectionable, Appellant actually misled the trial court with respect to the nature of the error he was asserting. State's Brief on Discretionary Review at 12–13. As it did at trial, the State contends that Appellant's objection was a misstatement of the law because it urged the trial court to instruct the jury that it must reach agreement with respect to mere "manners and means" of committing the offense. The State argues that whether Appellant contacted J.F.'s orifices and whether he penetrated them simply constitutes different "manners and means" for jury-unanimity purposes. The State further argues that, by requesting an instruction that the jurors must agree as to the "manner" in which Appellant committed the offense, Appellant sought an instruction that would have erroneously required the jury to agree whether Appellant contacted versus penetrated J.F.'s various orifices—which, the State contends, are nothing more than mere "manner and means" of committing aggravated sexual assault.

We disagree. When both contact and penetration occur in a single sexual act, involving a single orifice, contact is subsumed by penetration. *See Jourdan*, 428 S.W.3d at 98 ("We have already discounted the possibility of egregious harm with respect to penile

---

[5] *See Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) ("As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at the time when the trial court is in a proper position to do something about it.").

contact versus penile penetration because contact is subsumed by penetration, and every juror would have, of necessity, at least found contact."). But that is not what Appellant objected to with regard to the trial court's proposed unanimity instruction. We read Appellant's objection to raise the issue of whether the jury had to be unanimous in its determination about which of J.F.'s orifices was contacted and/or penetrated, forming the basis for Appellant's conviction. This is an elemental determination because the contact and/or penetration of multiple orifices always constitutes more than one offense, regardless of whether the contact and/or penetration occurs in the same sexual encounter. *Gonzales*, 304 S.W.3d at 849.

Moreover, because he was specifically objecting to the trial court's own proposed erroneous unanimity instruction, Appellant's objection was at least specific enough to alert the trial court that the instruction contained an error of some kind with respect to that issue. Indeed, it was specific enough to alert the trial court that its particular unanimity instruction was improper because it allowed the jury to be non-unanimous concerning an elemental way in which the offense was committed—including the specific error of failing to require jury agreement with respect to which orifice Appellant contacted and/or penetrated. The trial court can only have understood Appellant's objection in this way. This Court has held that an objection to an erroneous jury charge need not constitute a paragon of clarity and specificity in order to trigger a "some" harm analysis for purposes of *Almanza. See Francis v. State*, 36 S.W.3d 121, 123 (Tex. Crim. App. 2000) (citing *Stone v. State*, 703 S.W.2d 652,

655 (Tex. Crim. App. 1986), for the proposition that an objection raising jury-unanimity error in the jury charge need only be sufficient to alert the trial court to the problem, and remanding for an *Almanza* harm analysis). We agree with the court of appeals that the objection lodged in this case was sufficient to invoke *Almanza*'s "some" harm analysis.

## IV. WAS THERE "SOME" HARM?

While we agree that the "some" harm analysis under *Almanza* was the proper standard of review for the court of appeals to undertake, we disagree with its conclusion that the error actually resulted in some harm to Appellant. As the court of appeals itself acknowledged, even the less exacting standard of "some" harm still requires that the record reveal "actual," and not merely "theoretical" harm. *French*, 534 S.W.3d at 698 (citing *Elizondo v. State*, 487 S.W.3d 155, 205 (Tex. Crim. App. 2016)). In assessing "some" harm under *Almanza*, an appellate court should consider the error in light of four factors: (1) the entire jury charge, (2) the state of the evidence, (3) the jury arguments, and (4) any other relevant information as revealed by the record as a whole. 686 S.W.2d at 171. In its analysis, the court of appeals found three of the *Almanza* factors—factors one, three, and four—to be essentially unrevealing, but the remaining factor—the second factor, namely, the state of the evidence—to be determinative.

### A. Factor One: The Entirety of the Jury Charge

In considering the first factor—the entire jury charge—the court of appeals simply reiterated its conclusion that the trial court erred in failing to instruct the jury that it must be

unanimous with respect to the orifice affected. *French*, 534 S.W.3d at 698. It did not ask whether anything in the balance of the jury charge either exacerbated or ameliorated this error. We have examined the entire jury charge, and we conclude that nothing, other than the erroneous instruction itself, either exacerbates or ameliorates the error.

## B.  Factor Three: The Jury Arguments

In considering factor three—the jury arguments—the court of appeals ultimately concluded that nothing in the arguments of the parties explicitly encouraged the jurors to be non-unanimous with regard to which orifice Appellant contacted and/or penetrated. *Id*. at 699. We agree.  The court of appeals did observe that the State made a jury argument that was "ambiguous" in its scope. *Id*. at 699. The prosecutor informed the jury that, pursuant to the erroneous unanimity instruction given by the trial court, it need not agree whether Appellant contacted or penetrated before it could convict him, regardless of which orifice was involved.  Unfortunately, she expressed this concept in such a way that the jury might have been confused whether she also meant to indicate that it need not be unanimous with respect to which orifice was involved. *Id*. Ultimately, however, the court of appeals concluded—and we agree—that the prosecutor never *explicitly* invited the jury to convict Appellant without agreeing as to which orifice was involved. *Id*.

## C.  Factor Four: Any Other Relevant Information

In considering the fourth factor—any other relevant information as revealed by the record as a whole—the court of appeals examined the complete record, including the voir

dire and the opening statements. The court of appeals closely examined, and detailed, the discussions engaged in, and comments made by, the prosecutor in front of the jury. We have also examined those parts of the record and, like the court of appeals, we have discerned nothing else that particularly militates in favor of a finding of harm. *Id*. at 699–700.

## D. Factor Two: The State of the Evidence

In concluding that "some" harm was shown, then, the court of appeals essentially relied only upon the second *Almanza* factor—the state of the evidence. As summarized by the court of appeals, that evidence was as follows:

> Although the State primarily presented evidence of a sexual assault of J.F.'s anus by Appellant with his penis, Beard [the CAC forensic interviewer] said that J.F. reported that, after Appellant had finished assaulting her, he would clean her "pee-pee" with "wipeys." Beard also testified that there were one or two instances where "[J.F.] said that it was his private in her pee-pee, but she self-corrected" to "butt." The jury could have inferred from J.F. that Appellant wiped her "pee-pee" and "butt" after he had assaulted her sexual organ and anus.

*Id*. at 700. Thus, the court of appeals identified what it viewed as some evidence in the record from which the jury might have rationally concluded that Appellant penetrated both J.F.'s anus and her sexual organ with his own sexual organ. Presumably the court of appeals believed that, confronted with at least some evidence to support either theory, the jury would have regarded itself as authorized to convict without reaching any agreement as to which was supported to a level of confidence beyond a reasonable doubt.

The CAC forensic interviewer did indeed testify that J.F. told her that, after sexually

assaulting her in the living room by penetrating her anus, Appellant wiped both J.F.'s anus and her sexual organ with a "wipey." It is possible that the jury could have inferred from this testimony that Appellant may have been cleaning up after himself after he had contacted or penetrated not just her anus, but also her sexual organ, with his own sexual organ. This evidence—that Appellant cleaned not only J.F.'s anus, but also her sexual organ, with a "wipey" after sexually assaulting her—might have taken on particular significance to jurors in light of J.F.'s statements to the CAC that Appellant penetrated her "pee-pee." But the evidence also demonstrated that, after each such claim by J.F., she consistently and expressly recanted it, denying that Appellant penetrated her "pee-pee" with his sexual organ.

The jury was also presented with testimony—from both the CAC and from J.F. herself—that Appellant caused J.F. to sit on his lap while the two were both naked. J.F. stated that Appellant forced her to sit naked on his lap in the living room while he penetrated her anus with his sexual organ. But even in light of all of this evidence, we still cannot say that Appellant suffered some harm, as a result, after our consideration of all four of the *Almanza* factors.

### E. Considering the Degree of Harm in Light of the *Almanza* Factors

Whether jury charge error is preserved or not, the degree of harm resulting from the error must be measured in light of all four factors identified in *Almanza*. *See* 686 S.W.2d at 171 ("In both situations the actual degree of harm must be assayed in light of" the *Almanza* factors). And when, as in this case, it has been determined that the jury charge error was

preserved, courts must remain cognizant that the goal is to discern whether the error was "calculated to injure the rights of [the] defendant." *Id*. This means, we have said, that courts must ask whether the defendant has suffered "some actual, rather than [merely] theoretical harm from the error." *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986).

It is true that the court's charge to the jury in this case erroneously permitted the jury to find Appellant guilty without being unanimous about whether Appellant contacted and/or penetrated J.F.'s anus or her sexual organ. That is the error upon which we are focused. It is also true that the record contains some evidence that could have led a juror to conclude that Appellant contacted and/or penetrated J.F.'sexual organ with his own sexual organ (*i.e.,* in the form of J.F.'s recanted statements, evidence that Appellant used a "wipey" to clean J.F.'s sexual organ in addition to her anus, and evidence suggesting that appellant forced J.F. to sit on his lap while they were both naked in the midst of a sexual assault). But after considering the charge error in this case in light of all of the *Almanza* factors, we conclude that the risk that a rational juror would have convicted Appellant on the basis that he contacted and/or penetrated J.F.'s sexual organ with his own—and not also on the basis that he contacted and/or penetrated her anus—is not "remotely significant,"[6] and is, in fact, so "highly unlikely" as to be "almost infinitesimal."[7]

There was overwhelming evidence presented at trial that Appellant contacted *and*

---

[6] *Dixon v. State*, 201 S.W.3d 731, 736 (Tex. Crim. App. 2006).

[7] *Owings v. State*, 541 S.W.3d 144, 152–53 (Tex. Crim. App. 2017).

penetrated J.F.'s *anus* with his sexual organ—on multiple occasions, in several different locations. J.F. detailed at least three separate incidents in which Appellant penetrated her anus with his sexual organ. The SANE's testimony further suggested to the jury that, if J.F.'s sexual organ had been penetrated by Appellant's penis, her sexual organ would have been "horribly damaged," and yet the physical evidence observed during her examination revealed no such damage. The State's final arguments also focused the jury's attention on the evidence that Appellant penetrated J.F.'s anus—not her sexual organ. The State said nothing during its final argument to encourage the jury to convict Appellant of genital-to-genital contact and/or penetration. And for his part, Appellant offered no defense specifically tailored to suggest that he only contacted and/or penetrated J.F.'s sexual organ and not her anus. Appellant's defense was that he did not sexually assault J.F. at all. *See Cosio*, 353 S.W.3d at 777 ("Cosio's defense was that he did not commit any of the offenses and that there was reasonable doubt as to each of the four incidents because the C.P. was not credible and the practical circumstances surrounding the incidents of criminal conduct did not corroborate C.P's testimony."). All of this suggests to us that the erroneous jury instruction in this case was not "calculated to injure the rights of the defendant," TEX. CODE CRIM. PROC. art. 36.19, and that any harm resulting from the error is purely theoretical, not actual.

This reasoning is analogous to what we have said in previous opinions dealing with error in the failure to require the State to elect which of multiple incidents of sexual assault it intended to rely upon for conviction. In *Dixon v. State*, 201 S.W.3d 731 (Tex. Crim. App.

2006), the defendant was convicted of aggravated sexual assault of a child. The child-victim testified that Dixon sexually assaulted her one-hundred times. *Id*. at 732. All but one of these sexual assaults, she testified, occurred at night time. At the end of trial, "defense counsel requested that the state be required to elect which instance of sexual assault it would rely upon for conviction." *Id.* The trial court denied defense counsel's request for an election. *Id.* at 732–33. We agreed that this was error, but we concluded that the error was harmless because "[t]he only distinguishable detail among the one hundred offenses is that one occurred during the day, while the others happened at night." *Id.* at 735. We reasoned that a jury that believed the victim's allegations at all would believe that the sexual assaults occurred at night—the nighttime sexual assaults accounted for ninety-nine percent of the assaults described at trial. *Id.* Thus, we concluded, there was "no remotely significant risk . . . that a jury would convict [Dixon] without believing he committed an offense at night." *Id.* at 736.

Similarly, in *Owings v. State*, 541 S.W.3d 144 (Tex. Crim. App. 2017), the defendant was convicted of aggravated sexual assault of a child based on the child victim's testimony that Owings sexually assaulted her multiple times in Owings's bedroom, at least once in "Grammy's room[,]" at least once in "Uncle Ty's room[,]" and at least once at Owings's father's house. *Id*. at 148. We held that any error in the trial court's failure to require the state to elect which instance of sexual assault Owings was guilty of, was harmless. *Id.* at 149. Specifically, we held that even if, theoretically, the jurors could have convicted Owings

without coming to a unanimous agreement—*i.e.* some jurors convicted based on the Uncle Ty's room incident, while others convicted on the basis of the Grammy's room incident—"the likelihood of that [was] almost infinitesimal." *Id.* at 152. This was true because the State's case depended entirely on the credibility of K.M., and Owings's defense—like Appellant's defense—was that he did not commit any sexual assault against the victim whatsoever. *Id.* at 153. Thus, we concluded, "it [was] highly unlikely that any juror voted to convict Appellant because they believed that one of those acts occurred" while the others did not. *Id.*

In our view, where a record reveals a risk of harm that is so small that it may properly be characterized as not "remotely significant,"[8] or where the risk of harm is "almost infinitesimal,[9] any harm resulting from the error is only theoretical harm. After considering the error in this case in light of all of the *Almanza* factors, we conclude that the risk was not "remotely significant" that Appellant was harmed. In fact, we deem the risk that he was harmed so "highly unlikely" as to be "almost infinitesimal."As a result, we hold that the record fails to support the court of appeals' conclusion that Appellant suffered "some" harm—that is to say, actual, not just theoretical harm—from the trial court's failure to instruct the jury that it must be unanimous with respect to which of J.F.'s orifices was penetrated.

---

[8] *Dixon*, 201 S.W.3d at 731.

[9] *Owings*, 541 S.W.3d at 144, 152–53.

## V.  CONCLUSION

Accordingly, we reverse the judgment of the court of appeals.  We remand the case to the court of appeals to resolve Appellant's remaining point of error.


DELIVERED:       December 19, 2018
PUBLISH