**Affirm and Opinion Filed June 18, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01121-CR

### No. 05-18-01122-CR

### OSCAR PEREACRUZ, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 282nd Judicial District Court
Dallas County, Texas
Trial Court Cause Nos. F18-00275-S and F18-00276-S**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Reichek, and Garcia[1]
Opinion by Justice Pedersen, III

A jury found appellant Oscar Pereacruz guilty of aggravated sexual assault of a child and indecency with a child by sexual contact. The jury assessed his punishment at fifty years' confinement in the Institutional Division of the Texas Department of Criminal Justice for the assault case and ten years' confinement for the indecency case; the trial court ordered the sentences to run consecutively. On

---

[1] The Honorable Justice Dennise Garcia succeeded the Honorable Bill Whitehill, a member of the original panel. Justice Garcia has reviewed the briefs and the record before the Court.

appeal, appellant contends that (1) the evidence is insufficient to support the jury's verdicts on both offenses, (2) his case was transferred between district courts in violation of his right to due process, and (3) the trial court's charge erroneously permitted the jury to convict him of both offenses without unanimity. We affirm the trial court's judgments.

## Background

At the time of trial, E.G., the complaining witness, was nine years old. Her mother ("Mother") testified at trial that Maricela Pereacruz, appellant's wife, used to babysit E.G. on Saturday nights while Mother worked.[2] The Garcia and Pereacruz families lived in the same apartment complex during this time period. Mother testified that E.G. stayed overnight at the Pereacruz apartment on the nights when Maricela babysat her and that the arrangement went on for more than a year. Mother related that when E.G. was almost six years old, she told Mother that she didn't want to stay at Maricela's anymore because Oscar had touched her. Mother told Maricela what E.G. had said, but Mother did not notify the police.

Approximately two years later, Child Protective Services ("CPS") received an anonymous report that E.G. was being sexually abused. Katressa Molett, an investigator for CPS, interviewed Mother and E.G. The child told Molett that

---

[2] After identifying members of families who share a last name, we refer to them by their first names to avoid confusion.

appellant had touched her when she was six. Molett referred the case to the Dallas Police Department, and the police arranged for E.G. to be forensically interviewed.

Following the child's forensic interview, the police arrested appellant, and he agreed to speak to Detective Jose Ortiz, of the DPD Child Exploitation Unit. Ortiz testified that appellant acknowledged he knew E.G. and Mother from the apartment complex. He admitted that his wife had babysat E.G. and that the child had stayed overnight at his family's apartment. However, he denied that he had ever touched E.G.

At trial, E.G. testified that when she stayed overnight at the Pereacruz apartment she slept on the top bunk bed with appellant's daughter. E.G. stated that appellant woke her by turning on a light in the bathroom or closet and then pulling her by her hand into the closet. She testified that on one occasion, when she was wearing tights, appellant "had his penis out and he put it like under my clothes." She said appellant positioned her on her hands and knees and held her from behind, and his penis touched her "butt" through her tights. She testified that appellant's penis felt "like a stick" and that when he finished she felt liquid on her tights. E.G. testified that, on another occasion, her tights and underwear were pulled down and that appellant again had her on her hands and knees, but that time he put his penis inside her "butt," and it felt slippery afterwards. E.G. also testified that appellant had

–3–

touched her vagina with his hand.[3] When asked what she could see in the closet, E.G. answered that she saw a girl's dresses, a red camera, and "maybe a gun."

Appellant testified on his own behalf. He denied that his wife had ever babysat E.G. or any other children in their apartment. He further denied that he had ever seen E.G. in his apartment. He testified that at the time of the alleged conduct, he was working as a machine operator for a company that made carpet padding. He generally worked from three o'clock in the morning to three o'clock in the afternoon. He woke up around two o'clock in the morning to get ready for work, got home around four o'clock, and went to bed between seven and eight o'clock in the evening. In addition, at night he took medicine for his epilepsy and, because of the medicine, did not wake up during the night. Appellant testified that he put a camera and his BB gun in the closet in the master bedroom.

Appellant called four other witnesses: his wife, Maricela; his nephew, Jose; Jose's sister, Denis; and Maricela's niece, Sara.[4] Their testimony was consistent concerning the living arrangements in the two-bedroom Pereacruz apartment: Sara and appellant's daughter and older son slept on the bunk beds in the master bedroom with the pet dog; appellant's brother, Jose, Denis, and a second daughter slept in the second bedroom; appellant, Maricela, and their younger son slept in the living room.

---

[3] E.G. was not asked and did not say whether the vaginal contact was part of one of the other incidents she described.

[4] Jose and Denis and their sister moved to Dallas with their father, Jose Lopez, to live with appellant and Maricela when Lopez and his wife divorced.

All of appellant's witnesses testified that Maricela did not babysit, although Maricela conceded that CPS had once cited her for providing child care without a permit. Appellant's witnesses testified that E.G. was never in the apartment, and—given the sleep schedules to which they testified—someone would always have been awake in the apartment.[5]

The jury found appellant guilty of both charges, assessing punishment at ten years for the indecency charge and fifty years for the assault charge. This appeal followed.

## Sufficiency of the Evidence

In his first two issues, appellant contends that the evidence is insufficient to support the jury's guilty verdicts on both charges. We review a sufficiency challenge by examining the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). "When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that

---

[5] Sara testified that she returned from her job between midnight and one o'clock in the morning and then stayed up until three or four o'clock in the morning on her phone, either in bed or in the closet; Jose testified that he does not "tend to sleep."

–5–

determination." *Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015) (citing *Hooper v. State,* 214 S.W.3d 9, 12 (Tex. Crim. App. 2007)). "A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony." *Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018). The uncorroborated testimony of a child victim is sufficient to support a conviction for aggravated sexual assault of a child and indecency with a child. TEX. CODE CRIM. PROC. art. 38.07.

Appellant's arguments do not identify a specific element of the charged offenses that is not supported by evidence. Instead, appellant argues broadly that the jury's verdict should be overturned for three reasons: (1) E.G.'s testimony was "contradictory, incomplete and unreliable"; (2) appellant's testimony concerning his daily schedule and medication routine foreclosed the possibility of middle-of-the-night conduct like that alleged by E.G.; and (3) his denial of any inappropriate conduct was corroborated by four more witnesses. We conclude that none of these arguments undermines the sufficiency of the evidence supporting the jury's verdict.

First, appellant emphasizes portions of E.G.'s testimony that were "incomplete" or that conflicted with other testimony at trial: she believed there was only one bedroom in appellant's apartment; she did not recall a family pet and said she never saw occupants other than appellant's immediate family; she did not remember what grade appellant's daughter was in or whether she attended E.G.'s school. The descriptions of schedules and sleeping arrangements given by

–6–

appellant's own witnesses make it possible that E.G. could have been in the apartment overnight and never seen a second bedroom or the extended family members. Regardless, a child's inability to recall facts goes to her credibility and the weight to be given her testimony, both of which are within the exclusive province of the jury. *See Wise*, 364 S.W.3d at 903; *see also Revels v. State*, 334 S.W.3d 46, 53 (Tex. App.—Dallas 2008, no pet.) (any inconsistent or vague details in child's testimony bore on her credibility).

Second, appellant testified that he suffers from epilepsy. At the time, he worked as a machine operator from three o'clock in the morning until three o'clock in the afternoon. He took his medicine when he went to bed at night—between seven and eight o'clock in the evening—because the medicine made him drowsy. He stated that he never woke up during the night. But he acknowledged that he woke up around two o'clock to get ready to be at work at three. Thus, by his own testimony, appellant was awake in the apartment in the middle of the night. His argument does not factually disprove E.G.'s allegations.

And third, appellant's denial—even if corroborated by his family—raised only a fact question for the jury. Appellant and his witnesses testified that E.G. was never in his apartment and that his wife never babysat her or any other children. But in his initial interview, appellant told Officer Ortiz that his wife had babysat E.G. and that the child had stayed overnight at his family's apartment. In addition, Maricela conceded at trial that CPS had investigated her for babysitting unrelated

children without a permit; the evidence suggested that case was dismissed because she had stopped doing so at the time of the investigation. Both E.G. and Mother testified that Maricela babysat E.G. on Saturday nights for more than a year while Mother went to work. The jury is the exclusive judge of witness credibility. *Wise*, 364 S.W.3d at 903. Jurors could accept E.G. and Mother's version of the facts and reject appellant and his family's version. *See Febus*, 542 S.W.3d at 572.[6]

Moreover, our review of the record establishes that the State produced evidence sufficient to prove the elements of both offenses it charged. E.G. testified to at least two separate occasions of abuse.

A person commits an aggravated sexual assault of a child if—regardless of whether he knows the age of the child at the time—he intentionally or knowingly causes the penetration of the anus of the child by any means or causes the anus of a child to contact the sexual organ of the actor. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (iv). E.G.'s testimony established that appellant committed the sexual assault charged by placing his penis in contact with her anus and penetrating her anus. *See id.*[7]

---

[6] Appellant contends briefly that Mother's testimony was not credible because after E.G. divulged the abuse, Mother did not report it to the police or take E.G. to a doctor. Mother also allowed E.G. to play with appellant's daughter afterward. Mother's credibility was a matter for the jury, just as E.G.'s was. *See Wise*, 364 S.W.3d at 903.

[7] Appellant complains that E.G. never identified him at trial, and he cites cases involving uncertain or equivocal identifications. Mother did identify appellant at trial as Maricela's husband, Oscar. E.G. was not asked by either party to make an in-court identification, but she described the person who touched and penetrated her as Maricela's husband, Oscar. Her testimony was not equivocal.

–8–

A person commits indecency with a child if he causes a child younger than seventeen years old to engage in sexual contact. *Id.* § 21.11(a)(1). Sexual contact includes causing contact between the hand of the defendant and the vagina of the complainant and causing the complainant to contact the sexual organ of the actor. *Id.* § 21.11(c).[8] E.G.'s testimony established that appellant committed the indecency charged by causing his sexual organ to contact her anus through her tights and by touching her vagina with his hand.

E.G.'s testimony alone is sufficient to support the jury's verdicts. *See* CRIM. PROC. art. 38.07. The plain language of article 38.07 establishes that her testimony did not need to be corroborated by physical evidence, as appellant suggests. *Id.* And jurors could have found E.G.'s testimony credible given the sensory details she related. She described the portion of the apartment in which she stayed and the sleeping arrangements of the people surrounding her. She testified to what she saw in the closet, including a camera and "maybe a gun." And she testified to how things felt: appellant's penis felt like "a stick"; her "butt" felt "slippery" after appellant contacted and penetrated her; her tights had "liquid" on them when he finished. We

---

[8] In the court's charge, "sexual contact" was defined as:

> any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child, or any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person, if committed with the intent to arouse or gratify the sexual desire of any person.

can infer from her testimony that appellant's conduct was intended to arouse and gratify his sexual desire.

After examining the evidence in the light most favorable to the verdict, we conclude that rational jurors could have found the essential elements of these offenses beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Thus, sufficient evidence supports the jury's verdicts finding appellant guilty of both aggravated sexual assault of a child and indecency with a child by sexual contact. We overrule appellant's first and second issues.

### Transfer of Case Between District Courts

In his third issue, appellant complains that his case was transferred from the 265th judicial district court to the 282nd judicial district court without his consent. He contends that the transfer violated local rules and that it was the result of forum-shopping by the prosecutor. As a result, he argues, his due process rights were violated.

### *Procedural Background*

When the State's case against appellant was originally filed, it was assigned to the 282nd district court. At the relevant time, the Honorable Judge Amber Givens-Davis presided over that court. At appellant's first trial setting, the State announced it was not ready and filed a motion to dismiss without prejudice. The State refiled the case in May 2018, and this time it was assigned to the 265th district court. At the relevant time, the Honorable Judge Jennifer Bennett presided over that court.

–10–

The record indicates that on August 10, 2018, appellant's attorney and the prosecutor assigned to appellant's case met and jointly requested a continuance. Appellant contends that, during that meeting, the prosecutor told his attorney that she had an agreement with the judge of the 282nd court to transfer the case back to that original court. Appellant's attorney took no action concerning this purported agreement to transfer the case. At that same meeting, the attorneys agreed on an August 27 trial date.

Regardless of any purported contact between the prosecutor and the judge of the 282nd court, it appears from the record that no effective agreement for the case to be tried in that court existed before August 24, three days before the trial setting. On the morning of August 24, the prosecutor emailed Judge Givens-Davis, copying defense counsel. She explained that Judge Bennett had transferred the case to an auxiliary court, but the judge of that auxiliary court was hearing a specially set case on August 27. Likewise, both Judge Bennett and a second auxiliary court judge also had trials set for that date. The prosecutor asked Judge Givens-Davis if she could hear the case on August 27, and the judge responded—also copying appellant's attorney—that she could do so. Then Judge Bennett signed an order transferring the case, and Judge Givens-Davis signed a receiving order. Thus, the case was heard in the 282nd court on August 27, the date to which appellant's attorney had agreed.

On the eve of trial, appellant filed motions to disqualify the prosecutor and to retain the case in the 265th district court. He argued, as he does in this Court, that

the *ex parte* communication between the prosecutor and Judge Givens-Davis was "illegal" and that the transfer was based on forum-shopping and violated local rules. The trial court denied both motions, and the parties agree that we should review appellant's complaint de novo.

*Compliance with Local Rules*

We first address the rules concerning transfer of cases between district courts. Appellant concedes that the Texas Constitution allows district judges to hold court for each other "when they deem it expedient." TEX. CONST. art. V, § 11. He concedes further that our government code permits a district judge to transfer any criminal case to another district court in the county, subject only to the county's local rules and the consent of the judge to which the case is transferred. TEX. GOV'T CODE ANN. §§ 24.003(b)(1), (b-1). Although he asserts that the transfer violated the district courts' local rules, he does not identify—and we have not found—any rule disallowing this transfer. Instead, the local rules governing criminal district courts in Dallas County provide:

> The transfer of cases between criminal district courts of Dallas County may be done by written order upon consent of the judges of those courts participating in the transfer.

RULES OF ADMINISTRATION FOR DALLAS CRIMINAL DISTRICT COURTS AND DISTRICT COURTS GIVING PREFERENCE TO CRIMINAL CASES PURSUANT TO TEXAS GOVERNMENT CODE SECTION 74.093, § 2.1 (Jan. 12, 2012). Appellant's case was

–12–

transferred by written orders of the two judges participating in the transfer. It did not violate any rule regarding transfer of cases in Dallas County.

*Ex Parte Communication*

Appellant also complains that the communication between the prosecutor and Judge Givens-Davis, without appellant's counsel present, violated the Texas Code of Judicial Conduct and warranted disqualification of the prosecutor. That code states that a judge "shall not initiate, permit, or consider *ex parte* communications . . . concerning the merits of a pending or impending judicial proceeding." TEX. CODE JUD. CONDUCT, Canon 3(B)(8), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B. But there is no allegation that the communication appellant complains of concerned the merits of his case; the transfer was a purely procedural matter. Thus, even if we assume a communication between judge and prosecutor occurred without a representative of appellant present, it was not a forbidden *ex parte* communication.[9]

*Due Process Violation*

Appellant contends that the transfer violated his right to due process and should render his convictions void. He cites no authority for the proposition that transfer between district courts can implicate due process, and we have found no

---

[9] Appellant's reliance on *Abdygapparova v. State* is misplaced. In that case, the trial judge showed bias toward the State by engaging in written communications with the prosecutor regarding potential jurors, voir dire questions, and presentation of argument. 243 S.W.3d 191, 209 (Tex. App.—San Antonio 2007, pet. ref'd). Appellant does not allege any act by the prosecutor or the trial judge that could similarly touch on the substance or presentation of the State's case against appellant.

such authority. Neither the local rules nor the government code required his agreement to effectuate such a transfer.

We conclude that appellant was afforded the general requirements of due process—notice and a hearing—in this case. As to notice of the transfer, no conversation between the prosecutor and the judge of the 282nd court outside the presence of appellant's attorney effectuated that transfer. Instead, the case remained in the 265th court until the prosecutor emailed the judge on the morning of August 24, copying defense counsel and asking for Judge Givens-Davis to hear the case because the 265th court and both auxiliary courts were busy. And as to a hearing, on the morning of the August 27, the judge stated on the record that she had received the motion to recuse or disqualify the prosecutor and the motion to retain the case in the 265th court. The judge then stated:

> The Court had an off-the-record conversation with both the State and defense, and counsel informed the Court of his basis, which is contained in his motion for recusal and disqualification.
>
> And at this time a motion for recusal and disqualification of ADA, Keena Miller, is denied.
>
> Motion to retain jurisdiction in the 265th is denied.

Thus the record establishes that the trial court held an informal hearing, to which appellant raised no objection, and then ruled on both motions on the record.

Moreover, nothing in the record establishes that the transfer caused appellant any harm. Although he alleges forum-shopping, he fails to identify any advantage the State purportedly gained as a result of the transfer. No factual allegations support

–14–

his assertion of bias against him by the prosecutor, and the record contains no allegation or evidence of unfair rulings or treatment by the trial judge. Indeed, appellant's issues in this Court are not linked to any ruling at trial: he complains of the sufficiency of the evidence supporting the jury's verdict and of charge error to which he did not object.

Appellant received both notice of the request for a transfer and a hearing on his objections to the transfer. We cannot conclude that his due process rights were violated because of the transfer of his case between district courts. We overrule his third issue.

## Unanimity of Jury's Verdict

In his fourth and fifth issues, appellant contends that the trial court's charge violated his right to a unanimous jury verdict. The Texas Constitution guarantees the defendant in a criminal trial the right to a unanimous jury verdict on each element of the charged offense. Tex. Const. art. V, § 1; *French v. State*, 563 S.W.3d 228, 233 (Tex. Crim. App. 2018). Jurors must agree about the specific crime that the defendant committed, that is, "upon a single and discrete incident that would constitute the commission of the offense alleged." *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011) (quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)).

Appellate resolution of a jury-charge issue involves two steps. First, we determine whether error exists. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim.

–15–

App. 2012). If error does exist, we determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). When—as in this case—the error was not objected to, we will reverse only if the error created egregious harm such that the defendant was denied a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). "Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011).

### *Aggravated Sexual Assault of a Child*

In his fourth issue, appellant argues that the trial court erroneously submitted the sexual assault question and denied him a unanimous verdict on that offense. The trial court's charge asked the jury whether appellant did "intentionally or knowingly cause the contact or penetration of the anus of [E.G.] by the sexual organ of [appellant]," when E.G. was younger than fourteen years of age. Appellant argues that the alleged contact and penetration constitute separate offenses, so when the trial court submitted them disjunctively, jurors were not required to agree unanimously on which of the two offense he committed.

The court of criminal appeals has held that the contact and penetration prohibited by section 22.021(a)(1)(B) of the penal code are separate offenses for jury-unanimity purposes. *French*, 563 S.W.3d at 234. Therefore, we agree with

–16–

appellant that the disjunctive submission of the contact and penetration offenses was erroneous. However, in this particular combination of offenses—contact and penetration of the same orifice—the court of criminal appeals has determined that there can be no egregious harm based on disjunctive submission. In a case with a similar submission, the court concluded that every juror who found penetration would by necessity have also found contact. *Jourdan v. State*, 428 S.W.3d 86, 97 (Tex. Crim. App. 2014). As a result, when the offenses charged and found by the jury are a defendant's contact and penetration of the same orifice, the defendant—at a minimum—causes the contact offense, and there cannot be egregious harm based on a lack of unanimity. *Id.*

We conclude that appellant's case, in which he was charged with contact and penetration of E.G.'s anus with his sexual organ, is governed by the rule in *Jourdan*. Any juror who found penetration must have also found contact. Accordingly, there was no egregious harm in the disjunctive submission of the offenses. *Id.*; s*ee also French*, 563 S.W.3d at 238. We overrule appellant's fourth issue.

*Indecency with a Child by Sexual Contact*

In his fifth issue, appellant argues that the trial court also erred in its submission of the offense of indecency with a child and, as a result, appellant was denied a unanimous conviction by the jury. On this issue, the charge required the jury to determine whether appellant did:

> knowingly or intentionally engage in sexual contact with [E.G.], a child younger than 17 years, by contact between the hand of [appellant] and the genitals of [E.G.], or contact between the genitals of [appellant] and [E.G.], with the intent to arouse or gratify the sexual desire of [appellant].

Again, the two charged indecency offenses were submitted disjunctively, allowing jurors to find one form of sexual contact or the other. But each form of sexual contact identified by section 22.01(B) of the penal code is a separate criminal act, and juror unanimity is required as to a single charged act. *Pizzo v. State*, 235 S.W.3d 711, 719 (Tex. Crim. App. 2007). Because jurors in appellant's case could have disagreed as to whether appellant touched E.G.'s anus with his genitals or her genitals with his hand, the trial court's disjunctive submission was erroneous. *See id.*

The question, then, is whether this submission error caused appellant egregious harm. *Almanza*, 686 S.W.2d at 171. To determine whether charge error is egregious, we consider (1) the entirety of the jury charge itself, (2) the state of the evidence, (3) counsel's arguments, and (4) any other relevant information revealed by the trial record. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). "Egregious harm is a difficult standard to meet." *Id.* Before we can conclude that

appellant suffered egregious harm, the record must establish actual rather than theoretical harm. *Cosio*, 353 S.W.3d at 777.

When we review the entirety of the charge, we find nothing that helps to cure the submission error. The "standard perfunctory unanimity instruction" included in the charge is not sufficient to rectify the error. *See id.* at 774 ("The jury may have believed that it had to be unanimous about the offenses, not the criminal conduct constituting the offenses."). On the other hand, when we review the arguments of counsel, we find no suggestion that counsel instructed jurors, or suggested to them, that their verdict could be anything but unanimous.

We conclude, however, that the evidence before the jury in this case made it highly unlikely that a non-unanimous verdict was rendered on the indecency charge. E.G.'s testimony described the incidents of criminal conduct at issue here. Appellant's defense was that he did not commit any of the offenses. He contended below, and he argues in this Court, that E.G. was not credible and that she was never present in his apartment as she alleged. He did not urge separate arguments concerning her claims that he touched her vagina or that his penis contacted her anus through her clothing: he denied any contact with E.G. at all. But the verdict indicates that jurors were not persuaded that appellant did not commit the offenses. If they had believed his testimony, they would have acquitted him on both the sexual assault and indecency charges. Instead, jurors believed E.G., and it is reasonable to infer that they unanimously agreed that appellant committed all of the conduct charged.

*See id.* at 777–78. Thus, the state of the evidence weighs strongly against finding harm to appellant on account of the erroneous submission. *See id.* at 778; *see also Arrington v. State*, 451 S.W.3d 834, 843–44 (Tex. Crim. App. 2015).

We conclude that any harm that resulted from the erroneous submission is only theoretical, not actual. *See French*, 563 S.W.3d at 238. We cannot say that appellant was denied a fair trial, and he has not suffered egregious harm. We overrule appellant's fifth issue.

## Conclusion

We affirm the judgment of the trial court.

/Bill Pedersen, III//

BILL PEDERSEN, III
JUSTICE

181121f.u05

181122f.u05
Do Not Publish
TEX. R. APP. P. 47

–20–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

OSCAR PEREACRUZ, Appellant

No. 05-18-01121-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas Trial Court Cause No. F18-00276-S. Opinion delivered by Justice Pedersen, III. Justices Reichek and Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 18th day of June, 2021.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

OSCAR PEREACRUZ, Appellant

No. 05-18-01122-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas Trial Court Cause No. F18-00275-S. Opinion delivered by Justice Pedersen, III. Justices Reichek and Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 18th day of June, 2021.