

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00458-CR

_____

JUAN ALBERTO MANRRIQUE, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 30th District Court
Wichita County, Texas
Trial Court No. 61,406-A

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

**MEMORANDUM OPINION**

A jury found Appellant Juan Alberto Manrrique guilty of fourteen counts of sexual misconduct against two complainants, sisters Catherine and Stacy.[1] Regarding Catherine, the jury found Manrrique guilty of one count of continuous sexual abuse of a young child (Count One) and guilty of six counts of indecency with a child by sexual contact—breasts (Counts Twelve through Seventeen). Regarding Stacy, the jury found Manrrique guilty of five counts of indecency with a child by sexual contact—breasts (Counts Eighteen through Twenty-Two) and guilty of two counts of indecency with a child by sexual contact—genitals (Counts Twenty-Three and Twenty-Four). The jury assessed Manrrique's punishment at life without parole for continuous sexual abuse of a young child and at twenty years' confinement for each of the thirteen indecency counts. The trial court sentenced him accordingly, ordering the thirteen twenty-year sentences to run concurrently with each other but consecutively to the life-without-parole sentence.

In his appeal, Manrrique raises three jury-charge issues. Because we hold that none of the three unpreserved jury-charge errors resulted in egregious harm, we affirm the trial court's judgments.

---

[1]We use aliases to protect the identities of the complainants, who were minors when the charged offenses were committed. *See* Tex. R. App. P. 9.10(a)(3); 2d Tex. App. (Fort Worth) Loc. R. 7.

# I. Brief Facts[2]

The jury heard evidence that Manrrique sexually abused the complainants when each was a teenager.[3] The evidence showed that he sexually assaulted Catherine multiple times from February 2016 to August 2016 when she was thirteen years old. Specifically, he digitally penetrated her anally more times than she could count—occasionally during the school year and two to three times a week during the summer months she spent in his home. On numerous other occasions during that period—more than five—he groped her breasts. The evidence showed that Manrrique abused Stacy when she was a teenager by groping her breasts on more than five occasions and by touching her genitals on five to ten occasions.

# II. Manrrique's Issues

Of Manrrique's three issues, two complain of error in the portion of the jury charge pertaining to the continuous-sexual-abuse count. In his first issue, Manrrique contends that the trial court erred by providing a nonstatutory definition of *penetration* in the charge, thereby improperly commenting on the weight of evidence, and that the error caused egregious harm by "judicially endors[ing]" the definition the State relied on in voir dire, its opening statement, trial, and its closing argument. In his second

---

[2]This opinion does not include a detailed statement of facts because Manrrique has not challenged the sufficiency of the evidence supporting his convictions. Relevant facts are discussed in the analyses of the issues.

[3]Stacy was almost seven years older than Catherine.

issue, Manrrique contends that because the continuous-sexual-abuse count of the indictment alleged as the underlying act of sexual abuse only aggravated sexual assault of a child by digital penetration of Catherine's anus, the trial court erred by instructing the jurors in a way that allowed them to convict him of continuous sexual abuse if they found he had committed indecency with a child by sexual contact by touching Stacy's genitals.

In Manrrique's third issue, he complains of error in the jury charge pertaining to the thirteen indecency counts. Specifically, he complains that the trial court reversibly erred by not sua sponte instructing the jurors that they must unanimously agree about the specific criminal conduct he committed for each individual count of indecency with a child by sexual contact. Manrrique contends that this error caused egregious harm because (1) the jury heard specific evidence of only three incidents at most of his touching Catherine's breasts, but six counts were alleged; (2) the jury heard specific evidence of only one incident of his touching Stacy's breasts, but five counts were alleged; and (3) the evidence of his touching Stacy's genitals was so general that it would be difficult for a jury to assign an act to a specific count. Thus, Manrrique contends that there is no way to conclude that the jury unanimously found him guilty of the same specific conduct for each count.

### III. Standard of Review

We apply the same standard of review to all three issues. We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v.*

4

*State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Id.* If error occurred, whether it was preserved determines the degree of harm required for reversal. *Id.*

As detailed below, Manrrique correctly identifies error in all three issues. However, he did not preserve any of the errors, so we apply the same measure of harm to all three issues. Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19. The appropriate inquiry for egregious harm is fact- and case-specific. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

In making an egregious-harm determination, we must consider "the actual degree of harm . . . in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. *See generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*). We consider the first factor, the entire jury charge, to decide whether anything else in the charge intensified or diluted the charge error. *French v. State*, 563 S.W.3d 228, 236 (2018). For the second factor, we examine the jury arguments to determine whether they "exacerbated or ameliorated error in the charge." *Arrington v. State*, 451 S.W.3d 834, 844 (Tex. Crim. App. 2015). We consider

5

the third factor, the state of the evidence, to assess whether the evidence increased or decreased the risk that the jury-charge error actually harmed the defendant. *Id.* at 840. We consider the fourth factor—other relevant information in the record—(1) for "any actual indication" that the error affected the jury's verdict, *Escovedo v. State*, 902 S.W.2d 109, 115 (Tex. App.—Houston [1st Dist.] 1995), *pet. ref'd*, 934 S.W.2d 145, 146 (Tex. Crim. App. 1996), and (2) to determine whether anything in this catchall category "clarified or exacerbated" the error, *Rodriguez v. State*, No. 02-18-00057-CR, 2019 WL 406167, at *7 (Tex. App.—Fort Worth Jan. 31, 2019, no pet.) (mem. op., not designated for publication).

Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). The purpose of our review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

## IV. Defining *Penetration* in the Jury Charge

### A. Error

In his first issue, Manrrique contends that the trial court erred by defining the nonstatutory term *penetration* in the jury charge, and the State agrees. Because the Penal Code does not define *penetration*, we hold that the trial court erred by defining the term in the jury charge.

6

In Count One of the indictment, the grand jury charged Manrrique with committing continuous sexual abuse of a young child (Catherine) by digitally penetrating her anus on at least two occasions during a period from February 2016 through August 2016. *See* Tex. Penal Code Ann. §§ 21.02(b)(1) (providing that a person commits continuous sexual abuse of a child by committing two or more acts of sexual abuse during a period of thirty days or more), (b)(2) (providing that the complainant must be younger than fourteen years old), (c)(4) (providing that aggravated sexual assault of a child is an act of sexual abuse), 22.021(a)(1)(B)(i), (2)(B) (providing that one way a person commits aggravated sexual assault of a child under fourteen years of age is by intentionally or knowingly causing penetration of the child's anus). The corresponding application paragraph of the jury charge tracked Count One. However, the abstract portion of the jury charge pertinent to Count One "instructed that, as to the offense of Aggravated Sexual Assault, *penetration is complete regardless of how slight*." [Emphasis added.] *Penetration* is not defined in the Penal Code. *Green v. State*, 476 S.W.3d 440, 442, 445–46 (Tex. Crim. App. 2015).

Because the term is not defined in the Penal Code, the trial court should not have defined it in the charge. Article 36.14 of the Texas Code of Criminal Procedure provides that in a jury trial,

> the judge shall . . . deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in [the] charge calculated to arouse the sympathy or excite the passions of the jury.

7

Tex. Code Crim. Proc. Ann. art. 36.14; *see also Green*, 476 S.W.3d at 445. Generally, definitions of terms not specifically defined by statute are not law applicable to the case under Article 36.14. *Green*, 476 S.W.3d at 445. Nonstatutory definitions in the jury charge, even if "facially neutral and legally accurate," can be improper comments on the weight of the evidence. *Kirsch*, 357 S.W.3d at 651. A jury should be able to accord any meaning "which is acceptable in common parlance" to a term not defined by statute. *Green*, 476 S.W.3d at 445 (citing *Kirsch*, 357 S.W.3d at 650); *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992) ("Words not specially defined by the Legislature are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance.").

In *Green*, which involved a prosecution for aggravated sexual assault of a child, the trial court, over Green's objection, provided a definition of *penetration* of a female sexual organ as something that "occurs so long as contact with the female sexual organ could reasonably be regarded by ordinary English speakers as more intrusive than contact with the outer vaginal lips *and is complete, however slight, if any*." 476 S.W.3d at 444 (emphasis added). The trial court further instructed the jury, over Green's objection, that "touching beneath the fold of the external genitalia amount[ed] to *penetration* within the meaning of the aggravated sexual assault statute." *Id.* (emphasis added). The Texas Court of Criminal Appeals held that *penetration* is a common term that does not have a technical meaning. *Id.* at 445. Therefore, "the jury was free to

8

assign [*penetration*] any meaning that is acceptable in common parlance, and the trial court[]" erred by "instructing the jury to apply [a] particular definition[]" of *penetration*. *Id. But see Turner v. State*, 626 S.W.3d 88, 97 (Tex. App.—Dallas 2021, no pet.) (holding almost identical language to that used in Manrrique's jury charge—"penetration is complete however slight"—is a correct statement of the law and a proper instruction in sexual assault cases).

Here, the trial court instructed the jury that "penetration is complete regardless of how slight." Following *Green*, as we must, *Sierra v. State*, 157 S.W.3d 52, 60 (Tex. App.—Fort Worth 2004) (op. on reh'g), *aff'd*, 218 S.W.3d 85 (Tex. Crim. App. 2007), we hold that the trial court erred by so instructing the jury. *See Green*, 476 S.W.3d at 445–46. *But see Turner*, 626 S.W.3d at 97.

## B. No Egregious Harm

In *Green*, the Texas Court of Criminal Appeals applied the some-harm test because Green had preserved error, and the court determined that the trial court's error in defining *penetration* in the charge did not harm him. *See Green*, 476 S.W.3d at 446. Here, we apply the egregious-harm test because Manrrique did not preserve error. *See Almanza*, 686 S.W.2d at 171. When we consider the four *Almanza* factors— the entire jury charge, the jury arguments, the state of the evidence, and other relevant information in the record—we hold that the trial court's error in defining *penetration* in Manrrique's jury charge did not cause egregious harm. *See Green*, 476 S.W.3d at 446; *Almanza*, 686 S.W.2d at 171.

9

## 1. The Entire Jury Charge

Our examination reveals that nothing in the entire jury charge "exacerbate[d] or ameliorate[d] th[e trial court's] error" in providing a definition of *penetration*. *French*, 563 S.W.3d at 236. The jury charge as a whole weighs against a determination of egregious harm for three reasons. *See Green*, 476 S.W.3d at 446. First, even though the trial court's definition of *penetration* was not statutory, it "accurately described the common meaning[] of the term[]." *Id.* For example, the definition was consistent with the Texas Court of Criminal Appeals's statement in *Vernon*, made in the context of addressing sufficiency of the evidence to support an aggravated-sexual-assault conviction, that "'penetrate' may mean 'to enter into' or 'to pass through.'" 841 S.W.2d at 409; *see Green*, 476 S.W.3d at 447.

Second, the definition did not improperly "draw[] the jury's attention to particular evidence" because penetration was an element of the offense, so "the jury's attention would already have been focused on the meaning of the" term even without the definition. *Id.* at 446–47. Thus, the instruction on *penetration* would not have invaded the jury's fact-finding authority. *See id.* at 447–48.

Third, the trial judge admonished the jury in the jury charge to ignore anything that appeared to be his opinion about the evidence. *See id.* at 448–49. Even though we recognize that the trial court instructed the jurors in the jury charge that (1) they were "bound to receive the law from the Court," (2) the law was in the written jury charge, (3) they were bound to "be governed thereby," and (4) they were to "wholly

disregard[]" any "statements of law made by counsel[] not in harmony with the law as stated . . . by the Court in these instructions," the trial court also instructed the jury in the charge:

> You are the exclusive judges of the facts proven, of the credibility of the witnesses and of the weight to be given to the testimony . . . .
>
> You are instructed that you are not to allow yourselves to be influenced in any degree whatsoever by what you may think or surmise the opinion of the Court to be. The Court has no right by any word or act to indicate any opinion respecting any matter of fact in this case, and if you have observed anything which you may interpret as the Court's opinion upon any matter of fact in this case, you must wholly disregard it.

This court presumes that the jury followed the instructions that the trial court gave. *Perez v. State*, 562 S.W.3d 676, 694 (Tex. App.—Fort Worth 2018, pet. ref'd). This instruction, which specifically directed the jurors to disregard "anything" which they could interpret as the trial court's opinion about a fact issue, weighs against an egregious-harm decision. *See Green*, 476 S.W.3d at 449.

Even if the trial court's defining *penetration* in the jury charge was a comment on the weight of the evidence, given the "benign" nature of the definition and the fact that the jury was already focused on penetration because it was an element of the offense, the comment was harmless error. *See id.* at 448; *cf. Turner*, 626 S.W.3d at 99 (holding the trial court's inclusion of "penetration is complete however slight" in the jury charge was not an improper comment on the weight of evidence because it

11

did not define *penetration*, point the jury to a particular resolution of an issue of fact, or emphasize a certain item of evidence).

In sum, the jury charge as a whole weighs against a determination of egregious harm resulting from the trial court's error of defining *penetration* in the charge. *See Green*, 476 S.W.3d at 449.

## 2. Jury Arguments

Our examination of the parties' jury arguments reveals that on balance, they did not "exacerbate[] or ameliorate[ the trial court's] error" of defining *penetration* in the charge. *Arrington*, 451 S.W.3d at 844. It is true that the State emphasized the definition in its arguments. During the State's initial closing argument, the prosecutor repeated the definition and reminded the jurors that they had sworn to follow it:

> We talked in voir dire about what penetration is. And I want to remind you that penetration is the slightest breaking of the [plane] of the anus with the finger. We told you what the courts say about it and what the law is. Penetration can be through a glove, it can be between the panties and the shorts, and it can even be outside of the shorts. It can be through clothing.
>
> And we talked in voir dire, *and every single one of you said that you would follow the law* and you would not require skin-to-skin contact for penetration, and I just want to remind you of that. [Emphasis added.]

However, defense counsel's argument did not focus on the definition of *penetration*. Defense counsel emphasized that the issue was whether any sexual abuse had occurred, not whether a lesser act of sexual abuse instead of penetration had occurred:

12

> There's no DNA in this case. There's no medical evidence. There's no physical evidence, and credibility is paramount.
>
> So I want to go through [Catherine's] testimony and talk about changes in her testimony, discrepancies in her testimony, and conflicts in her testimony. . . .

Defense counsel then discussed conflicts in the evidence, including the evidence concerning which grade Catherine was in when the alleged sexual abuse occurred, how many months it allegedly went on, and whether she did or did not tell her father about the sexual abuse. Defense counsel also discussed weaknesses in the evidence, highlighting the impossibility of the sexual abuse occurring two to three times per week in the summer when Catherine was at her father's home during the entire month of July. Defense counsel cast doubt on the evidence that Catherine outcried to her mother about only one incident of sexual abuse, then did not make any outcries to her sister, aunt, or counselor—despite the length of time spent with each of them after her outcry to her mother—and then soon outcried about many incidents to a stranger in the forensic interview.

Next, defense counsel focused on the credibility of Catherine's accounts of the alleged sexually abusive acts, noting that Catherine never screamed for help, even "in the middle of the night when she [was] being supposedly penetrated with the entire finger up to [Manrrique's] knuckle"; that she did not complain of pain; that she and Manrrique did not talk during the incidents; that "[s]he would wake up with his entire finger in her bottom" but over her pajama pants and underwear; that he would "freak

13

out" when she would move, showing that she was awake; that her mother never noticed that Catherine's underwear was ripped, stretched, or stained with blood; that at trial, Catherine did not at first remember the last time the sexual abuse happened; that she never texted about the sexual abuse before her outcries; and that she did not journal about the sexual abuse.

Defense counsel pointed to the weaknesses in the investigation, noting that Catherine's aunt, father, stepmother, paternal half-siblings, and stepsiblings were not interviewed, nor were Catherine's friends. Defense counsel also emphasized that the investigation did not include looking at a calendar and comparing it to the possession order governing Catherine's parents' possession of her. Defense counsel continued:

> Now, protecting kids is great. . . . But false allegations are just as bad. They ruin a man or a woman's life. And when you . . . don't do any investigation, . . . you get false allegations against a man like Juan.

Defense counsel concluded his argument by stating that Catherine's parents did not believe Catherine, and neither should the jury.

After defense counsel's closing argument, the prosecutor delivered the State's final closing argument, emphasizing the definition of *penetration* again, stating:

> I want to remind you just as [co-counsel for the State] did, every one of y'all told us that you could apply the law that penetration through clothing, so long as the anal [plane] is broken, is penetration, *and I hold you to the oath—to that. That was a statement that y'all made under oath.* [Emphasis added.]

Despite the State's emphasis on the definition in its arguments, defense counsel's closing argument demonstrates that Manrrique's defensive strategy was unaffected by

the accurate definition of *penetration* in the jury charge and its emphasis in the State's argument. *See Green*, 476 S.W.3d at 449–50.

Defense counsel's arguments and strategy focused on proving that Catherine made up the sexual abuse; there was no argument that only a lesser offense occurred. *See Green*, 476 S.W.3d at 450. The jury arguments did not intensify the effect of the jury-charge error because the definition of *penetration* was not inaccurate, and more importantly, it was not the focus of Manrrique's arguments or of his defensive strategy. This factor does not weigh in favor of a determination of harm from the charge. *See id.*

### 3. The State of the Evidence

Similarly, the state of the evidence did not make it more likely that the jury-charge error harmed Manrrique. *See Arrington*, 451 S.W.3d at 840. To the extent the parties disputed the evidence on the element of penetration, "the focus of that dispute was aimed at the broader question of whether" Catherine "was credible in stating that" Manrrique "had sexually touched her at all." *Green*, 476 S.W.3d at 451. The jury heard testimony from Catherine and others that Manrrique penetrated her anus by inserting his entire finger through her pajama pants and underwear. Catherine consistently testified that when she was thirteen years old, Manrrique sexually abused her on many occasions. She stated that on each occasion, when she slept or pretended to sleep, he would insert his finger into her anus over the fabric barriers of her pajamas and underwear.

15

Some evidence, however, could have supported a charge on the lesser offense of indecency with a child by contact,[4] *see* Tex. Penal Code Ann. §§ 21.02(c)(2), 21.11(a)(1), (c)(1), and a lesser-included-offense instruction for that offense was included in the charge. For instance, the counselor testified that Catherine initially told her that Manrrique had "touched" her but that she had not mentioned penetration in that first discussion. Further, as Manrrique points out, Catherine's mother testified that Catherine told her that Manrrique had "put his hand in between her butt cheeks."

Manrrique argues on appeal that he could have made an argument against penetration based on Catherine's mother's "conflicting" testimony if the trial court had not judicially endorsed the State's definition of *penetration*. However, Manrrique never argued or implied in the trial court that the jury should find him guilty of a lesser offense involving sexual contact; his was an all-or-nothing strategy focused on Catherine's credibility. *See Green*, 476 S.W.3d at 451. He argued that no offense at all had occurred. *See id.* Given that Catherine's credibility was the chief focus of Manrrique's strategy, the state of the evidence did not make it more likely that the definition of *penetration* in the charge egregiously harmed him. *See id.*; *Arrington*, 451 S.W.3d at 840.

---

[4]The only predicate acts alleged for the count of continuous sexual abuse of a child were acts of digital penetration of Catherine's anus.

## 4. Other Relevant Portions of the Record

Other relevant portions of the record did not exacerbate the trial court's error of defining *penetration* in the charge, nor did they reveal that the error harmed Manrrique. *See Rodriguez*, 2019 WL 406167, at *7; *Escovedo*, 902 S.W.2d at 115. The other relevant portions of the record in this case are voir dire, the trial court's oral instructions to the jury before opening statements, and the parties' opening statements.

As Manrrique highlights, during voir dire, the prosecutor harped on the definition of *penetration* as "breaking the plane" "ever so slightly," anticipating that Catherine's testimony would reflect that the penetration occurred through her pajamas and underwear. The prosecutor used the football analogy of scoring a touchdown by breaking the plane of the goal line, and he committed the veniremembers to applying that definition. He explained that penetration did not have to be skin-to-skin and that it did not matter if clothing lay between the finger and the anus. Manrrique never objected to the prosecutor's explanations of penetration. After hearing a thorough explanation of *penetration* in the voir dire, receiving the redundant definition of *penetration* in the written jury charge could have had at most only a diluted effect on the jury, not the vital effect required for a showing of egregious harm. *See Green*, 476 S.W.3d at 448; *Taylor*, 332 S.W.3d at 490; *Almanza*, 686 S.W.2d at 172.

Before the evidentiary portion of the trial began, the trial court gave the jury some oral instructions. The trial court instructed the jury on its duty to "determine the

17

facts from the evidence" alone. The court also instructed the jury that the evidence the jury would "be considering [would] consist of testimony of any witnesses and any exhibits that [the court admitted] into evidence." Finally, the trial court informed the jury that no "statement or ruling or remark that [the court made] during the presentation of testimony" would be "intended . . . to indicate . . . [the court's] opinion of the facts or the evidence." To the extent that Manrrique argues that the definition of *penetration* in the written charge was a comment on the weight of the evidence, these introductory directives by the trial court lessened any harm. *Cf. Jones v. State*, No. 09-15-00092-CR, 2015 WL 6998971, at \*9 (Tex. App.—Beaumont Nov. 12, 2015, pet. ref'd) (mem. op., not designated for publication) ("On this record, we cannot say that Jones suffered egregious harm[,] nor can we conclude that, because of the complained-of jury instruction, the jury ignored the trial court's oral instruction to disregard the testimony.").

In the State's opening statement, the prosecutor assured the jurors that after hearing Catherine's testimony, they would "have no doubt that [Manrrique's] finger broke the [plane] of the butthole which is *penetration*." [Emphasis added.] However, defense counsel's opening statement demonstrates that Manrrique's defensive strategy was unaffected by the State's emphasis on the definition of *penetration* or the presence of that definition in the jury charge. *See Green*, 476 S.W.3d at 449–50. Manrrique's defensive theory was that no sexual abuse at all occurred, not that sexual abuse

18

without penetration occurred, so for Manrrique, the definition of *penetration* was not a focus at trial.

In his opening statement, defense counsel focused on Catherine's lack of credibility. He stated that "nothing actually really happened." He told the jury that the evidence would show that Catherine hated Manrrique long before the abuse allegedly occurred because he was strict and mistreated her mother and because her mother supported him over her children. Defense counsel contended that it was unlikely that a sex abuser would choose to victimize someone like Catherine, who was intelligent and did not like or trust Manrrique and therefore was not susceptible to grooming. Defense counsel also mentioned the absence of physical or corroborating evidence: "There's not gonna be any corroborating evidence from DNA, from witnesses, or from medical testimony." Defense counsel focused on the anticipated evidence that Catherine was emotional, that she did not tell anyone about the sexual abuse for several months after it allegedly began, that she denied sexual abuse in her first visit with the counselor and did not mention it in her second visit despite having recently outcried to her mother, and that she did not make any more outcries after her single outcry to her mother until days later when she told the forensic interviewer—a stranger—about multiple acts of sexual abuse. Defense counsel focused on the differences between Catherine's allegations and Stacy's:

> [T]heir patterns of their descriptions were very different. You would think same pattern, but [Stacy] says Mom was gone. [Catherine] said Mom's asleep. [Stacy] will say [Manrrique] touched her vagina.

19

[Catherine] will say it was the butt. [Stacy] will say she was awake. [Catherine] said she was asleep.

[Stacy] will say it was under the clothes. [Catherine] will say that it was through the clothes. [Stacy] will say he threatened her. [Catherine] said he didn't threaten her. The patterns are very different.

Defense counsel concluded his opening statement by stating that Catherine had made up her allegations.

Given defense counsel's all-or-nothing approach, with its lack of emphasis on the definition of *penetration*, we hold that the opening statements did not magnify any impact of the trial court's error of defining the term in the charge; in fact, the opening statements do not show that the error harmed Manrrique. *See Rodriguez*, 2019 WL 406167, at *7; *Escovedo*, 902 S.W.2d at 115; *cf. Cornet v. State*, 417 S.W.3d 446, 455 (Tex. Crim. App. 2013) ("Because he did not question the jury about the defense during voir dire or invoke the defense in his opening statement, and because he made comments suggesting to the jury that appellant's conduct was a mistake and inappropriate, trial counsel's request for the medical-care defense appears to be an afterthought and does not appear to be the primary focus of his defensive theory at trial. This further suggests that the error in omitting the defensive instruction was harmless.").

Manrrique also argues that all the pre-jury-charge references in the record to the State-preferred definition of *penetration* support a decision that egregious harm resulted from the inclusion of that definition in the jury charge. The jury heard about

20

penetration in voir dire, opening statements, and testimony before receiving the jury charge. However, Manrrique never objected to those references. Under *Green*, the fact that the jury heard the definition of *penetration* from the State on several occasions—without objection—before receiving the definition in the jury charge weighs against a determination that egregious harm was caused by the trial court's inclusion of the definition in the charge. *See* 476 S.W.3d at 448.

Considering the other relevant portions of the record, we hold that the trial court's inclusion of the accurate definition of *penetration* in the jury charge did not egregiously harm Manrrique, *see id.* at 451–52, and that the relevant portions of the record did not increase the error's effect, *see Rodriguez*, 2019 WL 406167, at *7.

### 5. Determination of No Egregious Harm

All the factors weigh against a conclusion of some harm and certainly against a conclusion of egregious harm. *See Green*, 476 S.W.3d at 452. Even though the trial court erred by defining *penetration* in the jury charge, that error did not egregiously harm Manrrique. *See id.* That is, the trial court's defining *penetration* in the jury charge did not "affect the very basis of the case, deprive" Manrrique "of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). We overrule Manrrique's first issue.

## V. Including Surplus Law in the
## Abstract Portion of the Charge on Continuous Sexual Abuse

In his second issue, Manrrique complains that the abstract portion of the continuous-sexual-abuse charge—Paragraph Fourteen of the jury charge—allowed the jurors to convict him of committing indecency with a child by sexual contact by touching Stacy's genitals, an act and complainant not alleged in the continuous-sexual-abuse count of the indictment.

### A. Error

Paragraph Fourteen of the jury charge provided in pertinent part:

> A person commits the offense of Continuous Sexual Abuse of [a] Young Child *or Children* if:
>
> > (1) during a period that is 30 or more days in duration, the person commits two or more *acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims*; and
> >
> > (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and *the victim is a child younger than 14 years of age*, regardless of whether the actor knows the age of the victim at the time of the offense.
>
> . . . .
>
> "Act of sexual abuse" means any act that is a violation of one *or more* of the following penal laws: *(1) Indecency with a Child (by sexual contact), if the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child;* or (2) Aggravated sexual assault.
>
> For the purpose of Continuous Sexual Abuse of [a] Young Child *or Children*, a person *commits the offense of Indecency with a Child (by sexual contact)* if, with a child younger than fourteen years of age . . . , the person engages in *sexual contact* with the child . . . .

22

"Sexual contact," for the purpose of the offense of Continuous Sexual Abuse of [a] Young Child or *Children*, means any *touching* by a person, including touching through clothing, of *any part of the genitals* of a child with the intent to arouse or gratify the sexual desire of any person . . . .

. . . .

For Continuous Sexual Abuse of [a] Young Child *or Children*, the members of the jury are not required to agree unanimously on which *specific acts of sexual abuse* were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse against a child *or children* younger than fourteen years of age. [Emphasis added.]

The abstract portion of the charge tracked the statute, but, as the State concedes, it went beyond the indictment to inform the jury that continuous sexual abuse of a child could be committed in ways other than the sole manner alleged in the indictment—by digital penetration of Catherine's anus—and against children other than Catherine, the sole complainant named in the continuous-sexual-abuse count in the indictment. *See* Tex. Penal Code Ann. § 21.02. Because the surplus law given in the abstract portion of the charge was not applicable to this case, the trial court erred by including it. *See Plata v. State*, 926 S.W.2d 300, 303 (1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997); *Calvert v. State*, No. 02-18-00341-CR, 2020 WL 5241744, at *22, *24 n.37 (Tex. App.—Fort Worth Sept. 3, 2020, pet. ref'd) (mem. op., not designated for publication); *see generally* Tex. Code Crim. Proc. Ann. art. 36.14 (requiring the charge to "distinctly set[] forth the law applicable to the case").

23

## B. No Egregious Harm

The error was harmless, however, because the application portion of the charge, Paragraph Seventeen, tracked the indictment, instructing the jury:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that . . . Manrrique, on or about the 15th day of February, A.D. 2016, in the County of Wichita and State of Texas, did then and there, during a period that was 30 or more days in duration, to-wit: from on or about February 15, 2016 through August 25, 2016, when [he] was 17 years of age or older, commit two or more acts of sexual abuse against a child younger than 14 years of age, namely, on or about February 15, 2016 did then and there intentionally or knowingly cause the penetration of the anus of [Catherine], a child who was then and there younger than 14 years of age, by inserting [his] finger; and on [another date thereafter through August 25, 2016 committed the same act against Catherine], then you will find [him] guilty of the offense of Continuous Sexual Abuse of [a] Young Child or Children (Count 1) as alleged in the indictment.

When the application portion of the jury charge correctly tracks the indictment, the error of giving surplus law in the abstract portion of the charge is not reversible. *Plata*, 926 S.W.3d at 302–03; *Calvert*, 2020 WL 5241744, at *22, *24 n.37. "[I]ncluding a merely superfluous abstract instruction . . . has no effect on the jury's ability to fairly and accurately implement the commands of the application paragraph or paragraphs." *Calvert*, 2020 WL 5241744, at *22. This is so because "[i]t is the application paragraph of the charge, not the abstract portion, that authorizes a conviction . . . . An abstract charge on a theory of law that is not applied to the facts does not authorize the jury to convict upon that theory." *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). Accordingly, because the application portion of the jury charge authorized the

jury to convict Manrrique only if the jury believed that he digitally penetrated Catherine's anus twice during the relevant time period, as alleged in the indictment, we hold the error harmless. *See Calvert*, 2020 WL 5241744, at *24 n.37; *McCarty v. State*, No. 03-11-00628-CR, 2014 WL 1572455, at *6 (Tex. App.—Austin Apr. 15, 2014, no pet.) (mem. op., not designated for publication) (holding no reversible error when the abstract portion of the charge tracked the statutory definition of sexual contact regarding "intent to arouse or gratify the sexual desire of any person," but the application paragraphs tracked the indictment, properly authorizing conviction only if the jury found beyond a reasonable doubt that appellant acted with the intent to arouse and gratify his own sexual desires).

### VI. No Unanimity Instruction in the Jury Charge Regarding the Thirteen Counts of Indecency with a Child by Sexual Contact

In Manrrique's third issue, he complains of unpreserved error in the jury charge pertaining to the thirteen counts of indecency with a child by sexual contact alleged in the indictment. Specifically, he complains that the trial court reversibly erred by not sua sponte instructing the jurors that they must unanimously agree about the specific criminal conduct he committed for each individual count.

Counts Twelve through Twenty-Four of Manrrique's indictment charged him with committing indecency with a child by sexual contact against Catherine and Stacy. Counts Twelve through Seventeen—six counts—alleged that Manrrique had touched Catherine's breast with the intent to arouse or gratify his sexual desire. The evidence

25

showed that Manrrique had committed indecency with a child by sexually contacting Catherine's breasts on multiple occasions from February 2016 through August 2016, excluding July 2016. At trial, Catherine testified that Manrrique had touched her breasts more than five times (that is, at least six times) and described some specific incidents in which he had done so.

Counts Eighteen through Twenty-Four alleged that Manrrique had touched Stacy's breast five times and had touched her genitals twice. At trial, Stacy testified that Manrrique had touched her breasts more than five times and that he had touched her genitals more than he had touched her breasts. Like Catherine, Stacy described some specific incidents of the abuse.

## A. Error

The trial court erred by not ensuring unanimity in the verdicts of each of the thirteen indecency counts. As we have explained,

> The trial court has a responsibility to instruct the jury on the law applicable to the case and to submit a charge that does not allow for the possibility of a nonunanimous verdict . . . . *See Cosio v. State*, 353 S.W.3d 766, 776 (Tex. Crim. App. 2011). Nonunanimity may occur when the State charges a defendant with one offense and presents evidence that he committed the charged offense on multiple but separate occasions. *Id.* at 772. To ensure unanimity in this context, the jury must be instructed that it must unanimously agree on one incident of criminal conduct (or unit of prosecution), based on the evidence, that meets all of the essential elements of the single charged offense beyond a reasonable doubt. *Id.*

*Rodriguez*, 2019 WL 406167, at \*3. The jury charge in this case did not require the jury to unanimously agree that Manrrique committed any single criminal act regarding each

of the thirteen indecency counts. We therefore hold that the trial court erred by not requiring unanimous verdicts on each of the thirteen counts. *See id.* at *5 (citing *Arrington*, 451 S.W.3d at 841); *see also Cosio*, 353 S.W.3d at 776.

## B. No Egregious Harm

Even though the trial court erred by not requiring thirteen unanimous jury verdicts on the indecency counts, Manrrique did not preserve that error. We therefore apply the egregious-harm test. *See Almanza*, 686 S.W.2d at 171. To measure harm under the egregious-harm test, we consider (1) the entire jury charge, (2) the parties' arguments, (3) the state of the evidence, and (4) other relevant information in the record. *Id.*; *Rodriguez*, 2019 WL 406167, at *5–7. Based on those four factors, we hold that the trial court's error in not requiring unanimous verdicts on the thirteen indecency counts did not cause egregious harm. *See Almanza*, 686 S.W.2d at 171; *Rodriguez*, 2019 WL 406167, at *5–7.

### 1. The Entire Jury Charge

Just like the jury charge in *Rodriguez*, Manrrique's charge "permitted nonunanimous verdicts based on the evidence presented in the case regarding multiple instances of sexual abuse," so the "entirety of the charge" factor weighs in favor of harm. 2019 WL 406167, at *5; *Smith v. State*, 515 S.W.3d 423, 430 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

Nothing in the charge ameliorated the impact of the error. *See French*, 563 S.W.3d at 236. The State claims that the general instruction—"[N]o person may

'be convicted *of an offense* unless each element *of the offense* is proven beyond a reasonable doubt'"—"informed the jury that it must consider each count individually and distinctly" and might mitigate harm. [Emphasis added.] We fail to see how that instruction so informed the jury or possibly mitigated harm when the charge first stated that Manrrique had been charged with "thirteen counts of the felony *offense* of Indecency with a Child (by sexual contact) (Counts 12–24)." [Emphasis added.] Nothing in the instruction singled out by the State emphasizes the necessity of a unanimous verdict as to each *count*.

The jury charge mentioned unanimity in only two sections. The first time occurred in the charge for continuous sexual abuse of a child:

> For Continuous Sexual Abuse of [a] Young Child or Children, the members of the jury are not required to agree *unanimously* on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree *unanimously* that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse against a child or children younger than fourteen years of age. [Emphasis added.]

Manrrique implies that this instruction exacerbated the error because "nothing in the charge explained anything differently for" the indecency counts. However, the charge expressly limited this instruction to the continuous-sexual-abuse count. "We generally presume the jury follows the trial court's instructions in the manner presented." *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998); *see also Garcia v. State*, 614 S.W.3d 749, 757 (Tex. Crim. App. 2019) (citing same), *cert. denied*, 140 S. Ct. 2725 (2020). We therefore hold that the instruction in the continuous-sexual-abuse

28

portion of the charge did not magnify the harm caused by the absence of the unanimity instruction in the portion of the charge dedicated to the indecency counts.

The second place the jury charge mentioned unanimity was in its penultimate paragraph:

> After the argument of counsel, you will retire and select one of your members as your presiding juror. It is his or her duty to read the entire charge to you, to preside at your deliberations and to vote with you in arriving at your verdict. Your verdict must be *unanimous*, and after you have arrived at your verdicts, you may use the forms attached hereto by having your presiding juror sign his or her name to the particular forms that conform[] to your verdicts. [Emphasis added.]

A "standard, perfunctory unanimity instruction" like this in the jury charge does not cure the error caused by the trial court's failure to properly instruct the jurors that they need to unanimously agree that a defendant committed the same, single, specific criminal act before finding him guilty of a particular count. *Cosio*, 353 S.W.3d at 774; *see Ngo v. State*, 175 S.W.3d 738, 745, 752 (Tex. Crim. App. 2005). In fact, it compounds the error because it supports the idea "that the jurors need agree only on their ultimate general 'verdict' of guilty." *Ngo*, 175 S.W.3d at 745, 752. Based on the above, we hold that this factor supports an egregious-harm determination.

## 2. Jury Arguments

Our examination of the jury arguments reveals that they did not increase or decrease the impact of the trial court's error in failing to require unanimous verdicts on the thirteen indecency counts. *See Arrington*, 451 S.W.3d at 844. Manrrique does not discuss any impact on harm from jury arguments. The State points out that in its

jury argument, the prosecutor did not encourage the jury to be nonunanimous in its verdicts on the indecency counts. The State argues that "[t]his factor, therefore, militates against Manrrique's claim of egregious harm." However, we note that the prosecutor argued,

> Counts 12 through 17, well, those are the times that this Defendant groped or squeezed [Catherine's] breasts.

> Counts 18 through 22, those are the times that this Defendant touched [Stacy's] breasts. . . .

> . . . .

> And finally, Counts 18 through 24,[5] oh, those are the times that this Defendant touched [Stacy's] . . . genitals, and you'll see that.

> When we talk about all of these counts, I want you to remember what [the other prosecutor] told you in the beginning of this trial. Don't get caught up in all of it. Don't get caught up in that thick stack of paper. Remember why we're here. And we're here because of what he did to those girls. We're here for those girls.

> . . . .

> [Catherine] told you that the time frame started after she turned 13 in February and went through August of 2016 and that the digital penetration of her butt was two to three times a week in the summer, more randomly during the school year. And if you do the math on that and you take out the July visitation, which the defense was gonna point at she was at her dad's, she was at her dad's, she was at her dad's, fine. Take that out. You're still talking about 24 to 36 times that this Defendant digitally penetrated her anus with his finger. Talk about a tormenting pattern of abuse, that is a lot of times that he did that to her, to a 13-year-old girl . . . .

---

[5]Counts 23 and 24, not Counts 18 through 24, allege indecency by sexual contact with Stacy's genitals.

. . . .

[Stacy] told you that he touched her breast between five and ten times. Wasn't as much. And when he touched her vagina, it started off a few times over the clothes. Oh, but he quickly got to her skin, and that was more than five but less than ten times.

. . . .

And now it's your turn to have the courage to take a stand and find this Defendant guilty for all of those horrible things that he did to those two girls, to find this Defendant guilty of continuous sexual abuse of [Catherine] in Count 1 for all the times that he stuck his finger in her butthole, and guilty of groping and squeezing [Catherine's] breasts all those times, indecency of a child with sexual contact, and guilty of touching [Stacy's] breasts, indecency with a child by sexual contact. And finally, find him guilty of indecency of a child by sexual contact for touching [Stacy's] vagina.

We do not see that the prosecutor's statements rise to the level of telling the jurors to deliver thirteen unanimous verdicts based on the same thirteen criminal acts. We therefore hold that this factor is neutral. *See Arrington*, 451 S.W.3d at 844; *Rodriguez*, 2019 WL 406167, at *7.

### 3. The State of the Evidence

For this factor, "we look to the state of the evidence to determine whether the evidence made it more or less likely that the jury charge" actually harmed Manrrique. *Arrington*, 451 S.W.3d at 841. Given the unanimous guilty verdicts, there is no danger that some jurors might have believed that Manrrique committed some acts of indecency with a child by sexual contact but did not commit others. The state of the evidence therefore shows little to no likelihood that the charge error harmed Manrrique.

31

In their testimony, Stacy and Catherine detailed specific incidents of Manrrique's sexual abuse that supported the indecency counts, and they testified that the same types of abuse occurred on multiple occasions. *Cf. Rodriguez*, 2019 WL 406167, at *5. By convicting Manrrique of all the indecency counts, the jury implicitly found all of Catherine's and Stacy's specific and cumulative testimony credible and rejected his defensive theory that the girls had made up the allegations. *See id.* at *6; *see also Arrington*, 451 S.W.3d at 844 ("The jury in this case, after hearing all the evidence, clearly credited [the complainant's] story and did not believe appellant's categorical denial of all accusations."). Thus, as in *Rodriguez*, there was no danger that some jurors were persuaded that Manrrique committed only some incidents of indecency with a child by sexual contact while other jurors were persuaded only as to other incidents; instead, it was "highly likely" that the jurors unanimously found that he committed all the acts described by Catherine and Stacy. *See* 2019 WL 406167, at *6; *see also Arrington*, 451 S.W.3d at 842. This factor weighs against a determination of egregious harm. *See Arrington*, 451 S.W.3d at 844.

### 4. Other Relevant Portions of the Record

As to this final factor for assessing harm, we review the record for any other relevant information. *Rodriguez*, 2019 WL 406167, at *7. In voir dire, the prosecutor discussed the fact that unanimity was not required for a conviction of continuous sexual abuse of a child, but the prosecutor did not discuss the converse rule for the indecency counts. In the State's opening statement, the prosecutor told the jury not to

"let these just become counts that all run together because of how they have to be charged," described the indecency counts as "separate offenses," and asked the jury to return guilty verdicts on "each of" them. While the prosecutor did not encourage the jury to be nonunanimous in its verdicts on the indecency counts, he also did not encourage unanimity on those counts.[6] We hold that this factor does not weigh either in support of or against a determination of egregious harm.

## 5. Determination of No Egregious Harm

The only factor that weighs in favor of harm from the trial court's failure to instruct the jury to deliver unanimous verdicts on the indecency counts is the first one: the entire jury charge. After our analysis of the remaining factors and our review of the entire record, we cannot conclude that this charge error "affected the very basis of the case, deprived" Manrrique "of a valuable right, vitally affected [his] defensive theory, or made a case for" his convictions "clearly and significantly more persuasive." *Rodriguez*, 2019 WL 406137, at *7; *see Almanza*, 686 S.W.2d at 172. Accordingly, we hold that he was not egregiously harmed by the erroneous charge. *See Arrington*, 451 S.W.3d at 839–40 (holding appellant was not egregiously harmed by charge that omitted unanimity instruction when entirety of charge was the only factor

---

[6]We could have considered a split verdict or a jury note in evaluating this factor, *id.*; *Smith*, 515 S.W.3d at 431, but neither circumstance occurred here.

weighing in favor of egregious harm); *Cosio*, 353 S.W.3d at 777–78 (same); *Rodriguez*, 2019 WL 406167, at *7 (same). We overrule Manrrique's third issue.

## VII. Conclusion

Having overruled Manrrique's three issues, we affirm the trial court's judgments.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: September 16, 2021